**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**VILLAGE OF PALATINE, ILLINOIS,
Matthew Klein, Dick Kozdras, et
al., Defendants–Appellants.**

No. 93–4008.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1994.

Decided Oct. 11, 1994.

Michele M. Fox, Asst. U.S. Atty., Office of the U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, Jessica Dunsay Silver, Gregory B. Friel, Rebecca K. Troth (argued), Dept. of Justice, Civ. Rights Div., Appellate Section, Washington, DC, for U.S.

Jerome Wiener, Thomas R. Burney, Matthew M. Klein, Kerri L. McBride, Alex R. Seith (argued), Schain, Firsel & Burney, Chicago, IL, for Village of Palatine, IL., Rita Mullins, Matthew Klein, Dick Kozdras, Scott Buening, John E. Crowcroft.

Beth Anne Janicki, Ill. Mun. League, Springfield, IL, for amicus curiae Ill. Mun. League.

Thomas F. Geselbracht, Rudnick & Wolfe, Chicago, IL, Derrick M. Ford, Chicago Lawyers' Committee, Chicago, IL, for amicus curiae Oxford House, Inc., Oxford House–Mallard.

Before CUMMINGS, MANION and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

The Village of Palatine ("Village") appeals the issuance of a preliminary injunction against it pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("Act").

### Background

Oxford House, Inc., a non-profit Delaware corporation, was established in 1975 to assist in the establishment of housing for recovering alcoholics and recovering substance abusers. These "Oxford Houses" are democratically self-governing and financially self-supporting. They immediately expel any person using drugs or alcohol. Oxford Houses provide no professional treatment and have no paid staff residing at the premises. Pursuant to 42 U.S.C. § 300x–25, states are required to establish a revolving fund to provide start-up loans for group homes for recovering substance abusers as a condition for receiving certain federal block grant funds. Accordingly, Illinois contracted with Oxford House, Inc. to administer the revolving loan fund in Illinois.

Oxford House–Mallard is an unincorporated association operating under a charter issued by Oxford House, Inc. It is comprised of the residents of the property located at 913 South Mallard Drive in Palatine, Illinois, who rent the house from landlord Laura Grace. Oxford House–Mallard has six bedrooms and has been used as an Oxford House since August 1, 1992. At the time this action was instituted it had eleven residents; it can house up to twelve residents.

Oxford House–Mallard is located in an R–1B Single Family District in Palatine. "Permitted" uses as of right for R–1B residences include "single-family detached dwellings"

and "group homes" that are licensed or certified by the state, with no more than eight persons plus staff. The zoning ordinance defines "family" as, *inter alia,* a nuclear family plus not more than three relatives, or a group of up to three non-relatives. Its definition of "group home" includes the requirement of paid professional support staff. The eleven unrelated residents of Oxford House–Mallard do not meet the definition of "family," nor does the unlicensed, unstaffed facility meet the definition of "group home." Thus the zoning ordinance does not allow Oxford House–Mallard to operate in the R–1B Single Family District as of right.

Certain "special uses" are also allowed in R–1B districts when they are authorized by the Village. Such uses include group homes that are not licensed or certified by the state, or those that are licensed or certified but have nine or more residents. At the time Oxford House–Mallard was established there was no allowance in the zoning ordinance for a special use approval for a group home of any size that was not professionally staffed, but subsequently the Village amended its ordinance to allow a special use approval for a group home without professional staffing.

The organizers of Oxford House–Mallard were aware of the zoning restrictions affecting the proposed residence at 913 South Mallard Drive prior to any residents' occupying the property. However, in accordance with Oxford House, Inc.'s stated policy ("As a matter of practice, Oxford House, Inc. does not seek prior approval of zoning regulations before moving into a residential neighborhood. It considers itself no different from a biological family and its members just move into any suitable house"), the organizers did not seek a special use approval from the Village. After the residents moved into the property, the Village inspected the residence several times and cited it for violations of its rental property licensing requirements and its Life Safety Code. Many of the Life Safety Code violations arose because the inspector applied the standards applicable to rooming houses rather than those applicable to single-family dwellings.

The Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* as amended in 1988, prohibits—among other things—discrimination in housing based on handicap. 42 U.S.C. § 3604(f)(1). The Village concedes that the residents of Oxford House–Mallard are handicapped within the meaning of the Act. A violation of the Act may be shown in a number of ways. Plaintiff[1] relies (Pl.Br. at 17) on the definition of discrimination under the Act, which includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

Oxford House–Mallard wants the Village of Palatine to make a reasonable accommodation so that the house can continue to operate in its current condition. It requested such an accommodation prior to the institution of the instant litigation and was informed that it must apply for a special use approval. It appears that Palatine's current zoning ordinance would allow Oxford House–Mallard to continue in its present condition as a special use. However, the special use process involves public notice and hearing, and because of this Oxford House–Mallard has refused to invoke it.[2]

On March 22, 1993, Oxford House, Inc. filed a complaint with the Department of Housing and Urban Development alleging that the defendants in this action had discriminated against Oxford House–Mallard by failing to make a reasonable accommodation in the Village's zoning laws. On March 30, 1993, the Village filed a complaint in the Circuit Court of Cook County against landlord Laura Grace, Oxford House–Mallard, and Oxford House, Inc. for violations of the Village's zoning ordinance. It sought, among

---

1. The United States is the plaintiff-appellee in the case at bar. Since it is acting on Oxford House, Inc.'s complaint, however, and since Oxford House has filed an amicus brief in this Court, this opinion will refer to the United States and Oxford House collectively as "plaintiff."

2. The parties agree that both state and local law require the Village to provide notice and a public hearing before allowing a special use. The plaintiff, however, argues that applicable federal law requires the Village to waive this requirement.

other things, to limit the residence's occupancy to no more than three unrelated persons, pursuant to the definition of "family" contained in the Village's zoning ordinance. The United States commenced this action in April 1993 by filing a Complaint for Prompt Judicial Action pursuant to 42 U.S.C. § 3610(e), seeking both a temporary restraining order and a preliminary injunction pending the completion of the government's investigation of Oxford House, Inc.'s complaint. On April 12, 1993, the district court entered a Temporary Restraining Order enjoining the defendants from evicting the residents of Oxford House–Mallard. The matter was then referred to Magistrate Judge Joan B. Gottschall, who held three days of hearing commencing on May 17. In September 1993 she issued a Report and Recommendation concluding that a preliminary injunction should issue for the remainder of the government's investigation. District Judge Aspen overruled the parties' objections to that Report and Recommendation, with one minor exception, and adopted its Findings of Fact and Conclusions of Law. Accordingly, in December 1993 Judge Aspen issued a preliminary injunction enjoining the defendants from evicting the Oxford House–Mallard residents or from taking any further action with respect to the state court complaint filed by the Village against Oxford House–Mallard. The injunction gave the United States 90 days within which to inform the court of its intention to commence a civil action against the Village. Because the United States did file such an action, pursuant to 42 U.S.C. § 3614(b)(1)(A), in March 1993, the preliminary injunction remains in effect.

*Analysis*

■ On appeal the Village argues, among other things, that it cannot be found to have failed in its obligation to make a reasonable accommodation necessary to afford the residents of Oxford House–Mallard an equal opportunity to use and enjoy their dwelling because Oxford House–Mallard never invoked the procedures that would allow the Village to make such an accommodation. We

agree. Oxford House–Mallard has not requested a special use approval from the Village. Until it does, the Village cannot authorize its current use of the Mallard Drive property. Cf. *Smith & Lee Associates, Inc. v. City of Taylor*, 13 F.3d 920, 929 (6th Cir.1993) (city did not fail to make a reasonable accommodation by refusing to issue a letter of permission regarding plaintiff's use of its property; the city had no statutory authority to issue such a letter). To the extent that the plaintiff's federal suit alleges that the Village did not make a reasonable accommodation in its application of its zoning laws to Oxford House–Mallard, the issue is not ripe. *Cf. Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 193–94, 105 S.Ct. 3108, 3120–21, 87 L.Ed.2d 126 (42 U.S.C. § 1983 action); see *Oxford House, Inc. v. City of Virginia Beach*, 825 F.Supp. 1251, 1260, 1261 (E.D.Va. 1993) ("The zoning process, including the hearings on applications for conditional use permits, serves [the] purpose" of enabling a city to make a reasonable accommodation in its rules, policies, and practices. The city must be afforded the opportunity to make such an accommodation.).[3]

■ Part of plaintiff's argument, however, is that requiring Oxford House–Mallard to utilize the procedures for obtaining a special use approval is itself a failure on the part of the Village to make a reasonable accommodation to the needs of the handicapped. This claim is of course currently ripe. Plaintiff argues that requiring the residents of Oxford House–Mallard to undergo a public hearing on their proposed special use would subject them to "a firestorm of vocal opposition within the neighborhood," Pl.Br. at 32, that in turn would stigmatize the residents and increase the chances of a relapse. As the Magistrate Judge pointed out, however, there is no indication that the residents of Oxford House–Mallard would be required to appear at any public meetings, rather than an employee or representative of Oxford House, Inc. We are also sympathetic to plaintiff's concern that even if the Oxford

---

**3.** We note that if plaintiff's claim were of discriminatory intent, rather than failure to make a reasonable accommodation, this claim might well be presently ripe even though Oxford House–Mallard has not sought a special use approval.

House–Mallard residents were not required to appear at a public meeting, such a meeting would serve to focus neighborhood scrutiny on the residence and stigmatize its inhabitants as recovering alcoholics. However, determining whether a requested accommodation is reasonable requires, among other things, balancing the needs of the parties involved. See, *e.g., Smith & Lee,* 13 F.3d at 931. In this case the burden on the inhabitants of Oxford House–Mallard imposed by the public hearing—which they need not attend—does not outweigh the Village's interest in applying its facially neutral law to all applicants for a special use approval. *Oxford House, Inc. v. City of Virginia Beach,* 825 F.Supp. at 1262. Public input is an important aspect of municipal decision making; we cannot impose a blanket requirement that cities waive their public notice and hearing requirements in all cases involving the handicapped.

■ Of course, there are many zoning procedures that are impermissible under the Act either as written or as applied. A procedure may not be required only of the handicapped but not of other people. *Marbrunak, Inc. v. City of Stow,* 974 F.2d 43, 46 (6th Cir.1992). A procedure, neutral on its face, may not be applied in a discriminatory manner. *Potomac Group Home Corp. v. Montgomery County,* 823 F.Supp. 1285, 1297 (D.Md.1993). In the case at bar, however, the city uniformly requires a special use approval for non-permitted uses—the process is not limited to the handicapped. Likewise, there is no evidence that the special use procedures are applied in a discriminatory manner. Plaintiff has suggested no reason—beyond the generalized argument, which we reject as insufficient, that public hearings are detrimental to the handicapped—that Palatine's procedures violate the Act.

■ Even though Palatine's procedures do not themselves violate the Act, plaintiff need not resort to them if such resort is manifestly futile. See, *e.g., Oxford House–C v. City of St. Louis,* 843 F.Supp. 1556, 1570, 1582 (E.D.Mo.1994) (city routinely granted or denied variances or conditional use approvals

based on neighbor and aldermanic support or opposition). In this case, however, Palatine has an "exemplary record in responding to the needs of handicapped individuals," Pl. Short App. at 29 (Report and Recommendation ¶ 60), including individuals with substance-abuse problems. Indeed, the Village "has made numerous zoning changes in the face of community opposition" in order to accommodate the handicapped. *Id.* at 32 (Report and Recommendation ¶ 76). Under the circumstances it cannot be said that resort by Oxford House–Mallard to the special use procedure would be futile. *Id.* at 44 (Report and Recommendation, Conclusions of Law).

### Conclusion

■ In a case such as this, where plaintiff's sole argument is that the Village failed to make a reasonable accommodation under the Act, the Village must be afforded an opportunity to make such an accommodation pursuant to its own lawful procedures—unless it is clear that the result of such procedures is foredoomed, which is not the case here—before plaintiff will have a ripe claim. The preliminary injunction is vacated and the case is remanded to the district court with instructions to dismiss it without prejudice to the plaintiff's reinstating it at an appropriate time.

MANION, Circuit Judge, concurring.

I agree with the court that the Oxford House's failure to follow the Village of Palatine's procedures for obtaining a special use permit—a procedure required of all other residents—is fatal to its Fair Housing Act claim. I write separately to focus on some aspects of this case.

The Oxford House is an organization with a lofty and impressive goal; it seeks to assist recovering alcoholics and drug abusers. That honorable goal, however, does not put the Oxford House above the law. Yet, the Oxford House has adopted a rather high-handed policy: "As a matter of practice, Oxford House, Inc. does not seek prior approval of zoning regulations before moving into a residential neighborhood."[1] Appar-

---

**1.** The Oxford House's stated policy also explains       that "[i]t considers itself no different from a

ently the Oxford House believes that if members of the group move in quietly without notice it will be harder to evict them. This strategy is evident throughout this appeal. As a rationale for bypassing Palatine's procedures for obtaining a special use permit, the Oxford House asserts that its residents (now that they are in place) would be stigmatized by the required hearing. Of course, had the Oxford House not disregarded the law in the first place, there would be no residents illegally living in the house who could be stigmatized. In seeking affirmance of the preliminary injunction, the Oxford House also emphasizes the harm its residents would suffer if displaced. Any such harm is the Oxford House's own doing; again, had the Oxford House not prematurely moved the occupants into the house, no displacement would occur.

The Village of Palatine is very supportive of programs such as the Oxford House's, but it has laws and regulations that take into consideration the rights of other property owners. Palatine's special use process is not punitive. Requirements to follow such a political process—even where success may be uncertain—cannot be discarded as "futile." Nor does possible controversy among neighbors or elected officials mean futility.

If the Village of Palatine refused a special use permit, such denial is not automatically a violation of the Fair Housing Act. The Fair Housing Act requires "reasonable accommodation." It may well be that the accommodations that the Oxford House seeks in this case are not reasonable because of concerns for the safety of the Oxford House's residents, concerns for property rights of others, or concerns of residents of other group homes, for that matter. If, after a hearing, the Village of Palatine denies the special use permit, the reasonableness of the accommo-

dations sought from the Village will then be at issue.

biological family and its members just move into any suitable house." While the Oxford House may consider a group of unrelated people living under its roof the same as blood relations, the law does not. *Compare Moore v. East Cleveland,* 431 U.S. 494, 499, 97 S.Ct. 1932, 1935–36, 52 L.Ed.2d 531 (1977) (striking down zoning ordinance which limited the number of related persons who could live in a house zoned single-family) with *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974)

(upholding zoning ordinance which restricted the number of unrelated persons who could live in a house zoned single-family). Rather, traditional and extended families receive constitutional protection that individuals and groups of friends, acquaintances or even strangers do not. *See Moore,* 431 U.S. at 503, 97 S.Ct. at 1938 ("The Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition.").