Floyd A. BRANDT and Delores D. Brandt, Plaintiffs–Appellants,

v.

VILLAGE OF CHEBANSE, ILLINOIS, Defendant–Appellee.

No. 95–3093.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1996.

Decided April 26, 1996.

Alan F. Smietanski (argued), Kankakee, IL, for Appellants.

Thomas McClure (argued), Paul F. Michel, Elliot & McClure, Bourbonnais, IL, for Appellee.

Before COFFEY, EASTERBROOK, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Delores Brandt is a residential housing developer. When her husband Floyd became disabled, Brandt put her expertise to use. She built a triplex apartment, one unit of which had been modified to accommodate Floyd's wheelchair. Although all of its land is zoned for single-family housing, the Village of Chebanse granted a variance for the triplex. This experience suggested another project, and Brandt asked the Village for a variance on a second parcel she owned at the same intersection. Brandt proposed to demolish a century-old single-family house and build a four-unit, two-story building. The project would be a standard apartment building (known as "the Robinwood"), with modifications: both units on the first floor would have wide doorways, railings, and bathrooms with space for wheelchairs. Handicapped persons capable of independent living would find units of this kind attractive. The Village Board was unwilling to grant a second variance at the same intersection but proposed an alternative site for the building. Brandt rejected the alternative because of setback rules at the other site. Deadlock ensued, as did this suit under § 804 of the Fair Housing Act, 42 U.S.C. § 3604. The parties consented to final decision by a magistrate judge, see 28 U.S.C. § 636(c), who ruled for the Village after a bench trial.

One of Brandt's arguments is that the Village discriminated on the basis of the potential tenants' handicap, in violation of § 3604(f)(1)(B). This implies that if Brandt had proposed to build an unmodified copy of the Robinwood building, the Village would have assented to the construction. Unless the Village would have allowed any-old four-unit building at the intersection, the decision cannot be attributed to the tenants' handicap but must be chalked up to its multi-family nature. The magistrate judge heard testimony about the neighborhood (commercial properties are only a block away, and of course there is already a triplex at the intersection), about the neighbors' reaction (one was opposed to having handicapped persons living there), and about the Village Trustees' reasons. The Trustees denied that the prospect of having wheelchair-bound persons as residents affected their decision. They were concerned instead, they contended, about congestion and water runoff from the building and its proposed eight parking places. The Village has neither sanitary nor storm sewers, and the water table is close to the surface in the area of the proposed construction. Some nearby buildings have serious flooding problems. A few years earlier, the Village had turned down another request by Brandt to build a four-unit building at the same place. Because the earlier proposal lacked any modifications to facilitate access by the handicapped, that denial shows, the Village argued, that the reason for the more recent denial is unrelated to potential tenants' handicap. According to the Trustees, their offer to allow construction of a four-unit building with handicap accommodations in another part of the Village that does not have a flooding problem shows their *bona fides*. The magistrate judge did not have to believe this; he could have found, from the protests of the neighbor and the proximity of commercial property, that the Trustees' reasons were pretextual. But he believed the Trustees, and this resolution of a credibility issue cannot be deemed clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

No matter, Brandt insists. The Village had a duty to make reasonable accommodations in its laws for handicapped tenants under § 3604(f)(3)(B), which defines "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling", as a species of discrimination. The magistrate judge concluded that no accommodation was necessary, because the Village had not created any obstacle to handicapped-accessible housing. Brandt was free to renovate the single-family building already standing at the site to make it accessible, or to demolish it and build a new single-family house with every convenience for the handicapped. Brandt had not identified any feature of the Village's zoning or building code that interferes with making a given edifice accessible. The magistrate judge wrote:

> The plaintiffs are clearly free to build handicapped accessible housing without interference from the defendant. However, the plaintiffs seem to mix and use interchangeably the term "multi-family" and "handicapped accessible." The Village of Chebanse has blocked the former but not the latter.

The Village adds that its offer to permit a variance elsewhere within its borders *was* a reasonable accommodation; because we agree with the magistrate judge's approach, we need not decide whether that is so. The offer assuredly defeats any claim that the Village's policies have a disparate impact on the handicapped, so we need not decide whether the analysis of *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977), a race-discrimination case, carries over intact to zoning ordinances and building codes that have a disparate effect on handicapped persons.

Most demands for reasonable accommodation by units of government involve groups of handicapped persons who seek to live together, either for mutual support as in the *Oxford House* cases, e.g., *City of Edmonds v. Oxford House, Inc.,* ── U.S. ──, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995); *United States v.*

*Village of Palatine,* 37 F.3d 1230 (7th Cir. 1994), or to permit full-time care by a staff, as in a nursing home, e.g., *Smith & Lee Associates, Inc. v. City of Taylor,* 13 F.3d 920 (6th Cir.1993). In either case, joint living arrangements are essential, some minimum size may be essential to the success of the venture, and the accommodation sought is a waiver of zoning rules that limit the number of unrelated families who may reside together. Even then, the Fair Housing Act permits local governments to set "reasonable . . . restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1); see *Oxford House–C v. City of St. Louis,* 77 F.3d 249 (8th Cir.1996). But Brandt does not want to build group housing. She proposes an apartment block for persons able to live on their own—and who therefore would be equally or more happy in single-family housing that had been renovated to accommodate wheelchairs. Brandt wanted to build four-unit housing for economic rather than therapeutic reasons. Each unit would be less expensive than a single-family house, and the increase from one unit to four also would augment Brandt's profits. No evidence in this record suggests that the proposal entails four units (including two non-accessible units), rather than one or two accessible units alone, for any reason other than reducing the cost per unit. Making all four suitable for the handicapped would require an elevator or equivalent lifting device, for which Brandt does not want to pay.

What this case comes down to, then, is a claim that the Fair Housing Act renders all single-family zoning unlawful whenever the developer is willing to make the units on the first floor accessible to persons in wheelchairs. Actually, the claim is even broader. Since March 1991 the Fair Housing Act has required developers to make the first floor units of all four-unit residential buildings handicapped-accessible. 42 U.S.C. § 3604(f)(3)(C), (7)(B). The modifications Brandt proposed to the Robinwood building are the sort of change any developer must make to erect that building anywhere in the United States today. Second floor units need not be accessible, however, unless the building has an elevator. 42 U.S.C.

§ 3604(f)(7)(A). So what Brandt proposes to build is essentially the minimum required by federal law. If such a proposal obliges a government to waive its single-family zoning rules, then four (or more) unit buildings can be erected anywhere a developer pleases. Those who find zoning laws unjustifiable limitations on the use of property would be cheered; but it is unlikely that the Fair Housing Act was designed to abolish single-family zoning for all developers who comply with the requirement that first-floor apartments be accessible to handicapped tenants.

"Reasonable accommodation" is a term in many federal regulations and statutes, a term with an accepted meaning. Our recapitulation in *Vande Zande v. Wisconsin Department of Administration*, 44 F.3d 538, 542 (7th Cir.1995), an employment case, carries over nicely to housing:

> It is plain enough what "accommodation" means. The employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work. The difficult term is "reasonable."
> ... To "accommodate" a disability is to make some change that will enable the disabled person to work. An unrelated, inefficacious change would not be an accommodation of the disability at all. So "reasonable" may be intended to qualify (in the sense of weaken) "accommodation," in just the same way that if one requires a "reasonable effort" of someone this means less than the maximum possible effort, or in law that the duty of "reasonable care," the cornerstone of the law of negligence, requires something less than the maximum possible care. It is understood in that law that in deciding what care is reasonable the court considers the cost of increased care.

See also *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir.1995) (applying the approach of *Vande Zande* to a Fair Housing Act case); *Palatine*, 37 F.3d at 1234 ("determining whether a requested accommodation is reasonable requires, among other things, balancing the needs of the parties involved").

█ Is permission to build multi-unit housing an "accommodation" at all? Not on this record. The variance is not necessary to allow handicapped persons to live in Chebanse, for those capable of independent living (the only ones who could use the proposed structure) could live as easily, if somewhat more expensively, in new or remodeled single-family houses. Brandt does not argue that the Fair Housing Act requires municipalities to eliminate rules that increase the expense of housing for all persons equally. See *Familystyle of St. Paul, Inc. v. City of St. Paul*, 923 F.2d 91, 94 (8th Cir.1991). Is the proposed accommodation "reasonable" in the sense that it is cost-justified? Again, not on this record. The costs include an increased potential for flooding and the loss of whatever tranquility single-family zoning offers to a neighborhood (see *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974)), with little corresponding benefit—for the proposed multi-unit building could be built as easily in the many tracts of suburbia or rural America already open to multi-family buildings. Chebanse is far from any large city; much of the surrounding land is unincorporated and therefore open to construction without regard to such details as zoning. It is not as if Brandt chose Chebanse for its well-developed public utilities! Unless the Fair Housing Act has turned the entire United States into a multi-family dwelling zone, Brandt must lose. It doesn't, so she does.

AFFIRMED.