_____

                           No. 95-2365
                           _____

Oxford House-A; Oxford             *
House, Inc.,                       *
                                   *
     Plaintiffs - Appellees,       *    Appeal from the United States
                                   *    District Court for the
     v.                            *    Eastern District of Missouri.
                                   *
City of University City,           *
                                   *
     Defendant - Appellant.        *
                           _____

               Submitted:  January 9, 1996

                   Filed:  July 5, 1996
                           _____

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
                           _____

LOKEN, Circuit Judge.


     Oxford  Houses  are  a  nationwide  network  of  self-governing,
transitional residences where recovering alcoholics and drug addicts can
live in a supportive group setting.  Oxford House locates its group homes
in residential neighborhoods.  Residents seek jobs in the community, pay
for their room and board, and are expelled if they relapse.  To be
economically viable, an Oxford House must have a minimum of eight to twelve
residents.  Congress supports the group home concept.  See 42 U.S.C.
§ 300x-25.  But the Oxford House site selection and minimum resident
criteria have put Oxford Houses at odds with many local zoning officials.[1]

_____

     [1]See City of Edmonds v. Oxford House, Inc., 115 S. Ct. 1776
(1995); Oxford House-C v. City of St. Louis, 77 F.3d 249 (8th Cir.
1996), rev'g 843 F. Supp. 1556 (E.D. Mo. 1994); United States v.
Village of Palatine, 37 F.3d 1230 (7th Cir. 1994); Oxford House,
Inc. v. City of Virginia Beach, 825 F. Supp. 1251 (E.D. Va. 1993);
Oxford House, Inc. v. Township of Cherry Hill, 799 F. Supp. 450
(D.N.J. 1992).

In this case, the City of University City, Missouri, threatened to evict residents who moved into "Oxford House-A" without obtaining the occupancy permit required by the City's zoning ordinances. Oxford House-A and its parent, Oxford House, Inc. (collectively "Oxford House"), commenced this action alleging that the City's zoning code violates the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 et seq., and other federal laws by discriminating against Oxford House's handicapped residents. Some months later, the City amended the code and granted Oxford House-A an occupancy permit for its ten residents. Oxford House dismissed this lawsuit without prejudice and then was awarded $35,000 in attorney's fees under the fee provision in the FHA. The City appeals the district court's decision that this lawsuit was the catalyst for the City's favorable action. Our recent decision in Oxford House-C v. City of St. Louis, 77 F.3d 249 (8th Cir. 1996), petition for cert. filed, 64 U.S.L.W. 3808 (May 23, 1996) (No. 95-1925), establishes that the lawsuit was unreasonable because Oxford House did not first give the City an opportunity to grant a reasonable accommodation. Accordingly, we reverse the fee award.

**I.**

On July 19, 1993, Oxford House leased a house in a part of the City zoned primarily for single-family dwellings. The code defined family to include a group of three unrelated individuals. Oxford House residents began to move in without applying for the occupancy permit the City requires of all new occupants to ensure code compliance. Because Oxford House planned to house ten unrelated residents, it could not have obtained an occupancy permit without an exemption from the single-family zoning restriction.

When they learned of Oxford House's actions, City officials threatened to evict those who had moved in without an occupancy permit. Counsel for Oxford House asked the City to "leave the house alone." Counsel for the City responded that Oxford House

must either apply for a special use permit, which the City would process quickly, or seek amendment of the zoning code.  The City promised not to proceed against past violations if no resident occupied the house until an occupancy permit issued.

On July 28, both sides went to court.  The City asked a state court to enforce the codes.  Oxford House filed this action in federal court, alleging violations of the FHA and other federal statutes.  A few days later, responding to Oxford House's separate administrative complaint, the Department of Housing and Urban Development ("HUD") filed its own action in federal court, obtained a temporary restraining order against eviction of the residents, see 42 U.S.C. § 3610(e)(1), and then entered into a Consent Order in which the City agreed not to evict anyone for 180 days if no more than eight persons occupied Oxford House-A.[2]

Oxford House applied for an amendment to the City's zoning ordinance that defined a "family."  Although the City Council rejected Oxford House's specific proposal, it amended the code in February 1994 to conform to a state statute which provides that the classification "single family dwelling" in a zoning law "shall include any home in which eight or fewer unrelated mentally or physically handicapped persons reside, and may include two additional persons acting as houseparents or guardians."  Mo. Rev. Stat. § 89.020(2).  The City's amended code provides that a "small" group home of eight residents and two houseparents is allowed in a residential area, and further provides that a larger group home may be allowed "as a conditional use."

These code changes did not necessarily solve Oxford House's problem for two reasons.  First, the phrase "mentally or physically handicapped persons" in state law does not apply to recovering

---

[2]On April 21, 1994, the City agreed to a supplemental Consent Order allowing nine residents.

alcoholics and drug addicts.  See City of St. Joseph v. Preferred Family Healthcare, Inc., 859 S.W.2d 723, 725 (Mo. App. 1993).[3]  Second, Oxford House intended to operate Oxford House-A with ten residents, rather than eight.  Nevertheless, construing the group home's two officers as the functional equivalent of houseparents, the City resolved these issues in Oxford House's favor and granted Oxford House-A an occupancy permit to use the premises as a "[c]ongregate dwelling housing up to 10 persons."

Four days later, Oxford House moved to dismiss this lawsuit without prejudice, reserving the right to seek attorney's fees.  The district court dismissed over the City's objection.[4]  Oxford House then moved for an award of $35,000 in attorney's fees, the district court granted that motion, and the City appeals.

## II.

The prevailing party in FHA litigation may be awarded costs and a reasonable attorney's fee.  See 42 U.S.C. § 3613(c)(2).  "Prevailing party" has the same meaning as it does under the more general civil rights statute, 42 U.S.C. § 1988(b).  See 42 U.S.C. § 3602(o).  Despite the voluntary dismissal, Oxford House argues that it should be deemed a prevailing party because its suit was the "catalyst" for the City's accommodation of Oxford House's request for a ten-resident group home in a single-family

---

[3]The City has not challenged the claim that Oxford House residents are "handicapped" for purposes of the FHA.

[4]Procedurally, there is nothing wrong with proceeding in this fashion.  See Brown v. Local 58, I.B.E.W., 76 F.3d 762, 766 (6th Cir. 1996); Baumgartner v. Harrisburg Hous. Auth., 21 F.3d 541, 550 (3d Cir. 1994).  However, when the City opposed dismissal on this basis, the court would have been well advised to consider the merits of the lawsuit and Oxford House's catalyst theory before dismissing.  It is not unusual for conditions to be imposed when dismissal without prejudice is granted long after a suit is filed. See Kern v. TXO Prod. Corp., 738 F.2d 968, 972 (8th Cir. 1984).

neighborhood.  We uphold a fee award under the catalyst theory if plaintiff's suit was in fact a catalyst for defendant's voluntary compliance, and if that compliance "was not gratuitous, meaning the plaintiff's suit was neither frivolous, unreasonable nor groundless." Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., #1, 17 F.3d 260, 262 (8th Cir. 1994) (quotation omitted).

The district court found that Oxford House's lawsuit was a catalyst for the City's action in amending its zoning code and issuing Oxford House a ten-resident occupancy permit.  The court did not consider the other catalyst theory issue -- whether the lawsuit was unreasonable.  We review that issue *de novo*.  See Degidio v. Pung, 920 F.2d 525, 529 n.7 (8th Cir. 1990).  Based upon our recent decision in Oxford House-C, we conclude that the fee award must be reversed because the lawsuit was unreasonable.

The zoning restriction at issue applied equally to handicapped and non-handicapped persons, providing that *no* group of four unrelated individuals could occupy a single-family residence without obtaining some type of zoning exemption.  In this regard, the restriction is different than the facially discriminatory provision invalidated on equal protection grounds in City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 436-37 (1985).  Therefore, to prove unlawful discrimination, Oxford House had to prove a violation of FHA's "reasonable accommodation" mandate -- that the City refused "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] persons equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

As in Oxford House-C, Oxford House sued before exhausting available, non-futile procedures under the City's zoning ordinances, procedures which, when invoked, produced a "reasonable accommodation" of Oxford House's desire for a ten-resident group

home.  Thus, the timing of the lawsuit was unreasonable.  As we said in
Oxford House-C, 77 F.3d at 253:

> The Oxford Houses must give the City a chance to accommodate
> them through the City's established procedures for adjusting
> the zoning code.  See United States v. Village of Palatine, 37
> F.3d 1230, 1233 (7th Cir. 1994); Oxford House, Inc. v. City of
> Virginia Beach, 825 F. Supp. 1251, 1261 (E.D. Va. 1993).  The
> Fair  Housing  Act  does  not  'insulate [the  Oxford  House
> residents] from legitimate inquiries designed to enable local
> authorities to make informed decisions on zoning issues.'  City
> of Virginia Beach, 825 F. Supp. at 1262. . . . In our view,
> Congress also did not intend the federal courts to act as
> zoning boards by deciding fact-intensive accommodation issues
> in the first instance.

Oxford House argues that its lawsuit was necessary to stop the City
from intentionally discriminating against residents by threatening them
with eviction.  There are two obvious answers to this contention.  First,
it is premised upon a self-inflicted wound.  Oxford House signed a lease,
moved two residents into the home without obtaining an occupancy permit,
and declared its intent to violate the zoning ordinance by moving a total
of ten unrelated residents into the home.  Apparently, this is part of a
nationwide Oxford House strategy to ignore local laws that treat its
residents differently than members of a biological family,[5] and to present
local zoning officials with a *fait accompli* by moving into a residential
neighborhood without seeking prior approval.  Having provoked the City into
taking action to enforce its facially neutral laws, Oxford House cannot
bootstrap itself into a

---

[5]Oxford House's belief that its members *must* be treated the
same as a biological family is highly suspect.  Compare Moore v.
City of East Cleveland, 431 U.S. 494 (1977), with Village of Belle
Terre v. Boraas, 416 U.S. 1, 9 (1974).  The majority in City of
Edmonds v. Oxford House, Inc., 115 S. Ct. 1776 (1995), did not
reach this issue, and the courts in Oxford House-C, Palatine, and
Virginia Beach construed the FHA as not prohibiting family-oriented
zoning restrictions, so long as the handicapped are treated the
same as other unrelated persons.

prevailing party because the City later granted an administrative accommodation when Oxford House eventually sought it.  See Village of Palatine, 37 F.3d at 1234-35 (Manion, J. concurring).

Second, while we can easily imagine situations in which an FHA anti-discrimination plaintiff might legitimately seek preliminary injunctive relief before exhausting local administrative zoning remedies, in this case adequate preliminary relief was obtained by HUD in a separate lawsuit and Consent Order.  This lawsuit was entirely premature.  It obtained no interim relief, and it should have been dismissed without prejudice when HUD and the City signed the Consent Order.

It is not the function of the catalyst theory to encourage FHA plaintiffs to file premature, superfluous lawsuits which then sputter fitfully, clogging district court dockets, while plaintiffs trudge through the administrative process, hopeful that the pending lawsuits will justify attorney's fee awards when local officials administratively accommodate the dwelling needs of the handicapped.  Because that is essentially what happened here, and because our decision in Oxford House-C confirms that the lawsuit was unreasonable, the district court's award of costs and attorney's fees is reversed.

A true copy.

Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-