In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2714

CHOSEN CONSULTING, LLC, doing business as CHOSEN HEALTHCARE, *et al.*,

*Plaintiffs-Appellants*,

*v.*

TOWN COUNCIL OF HIGHLAND, INDIANA, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:20-cv-00246 — **Philip P. Simon**, *Judge*.

ARGUED MAY 28, 2025 — DECIDED AUGUST 1, 2025

Before RIPPLE, ST. EVE, and KOLAR, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Chosen Consulting, LLC, d/b/a Chosen Healthcare, Indiana ATC JV, LLC, d/b/a Hickory Recovery Network, Highland Recovery, LLC, d/b/a Hickory Treatment Center at Highland, Chosen Highland, LLC, and Hickory House Recovery, LLC (referred to collectively as "Chosen") brought this action against the Town Council of Highland, Indiana, the Highland Municipal Plan Commission, and the

Town of Highland, Indiana (referred to collectively as "the Town"). Chosen alleged that the Town discriminated against patients with addiction-related ailments by refusing to provide a letter stating that Chosen's proposed use of its property complies with local zoning requirements. Chosen claimed that this discrimination violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 and requested compensatory, injunctive, and declaratory relief.

The district court granted summary judgment to the Town. Chosen now appeals the district court's denial of injunctive relief. Summary judgment on Chosen's claim for injunctive relief under the ADA and the Rehabilitation Act was proper because that claim is not ripe for adjudication.

# I

## BACKGROUND

### A.

This case concerns a property in Highland, Indiana that historically operated as a nursing home. In the 1970s, the property was classified as located in a "Class 'A-1' Residence District."[1] In September 1971, the Town's Board of Trustees enacted Ordinance No. 645, which authorized a conditional use of the property as a nursing home for National Nursing Home, Inc. and its successors and assigns. At some point after September 1971, the zoning district in which the property is located was changed to a R-1A residential district.

Chosen purchased the property in April 2019 and began transitioning it to treat primarily patients with addiction-

---

[1] R.125-3 at 2.

related ailments. As part of this transition, Chosen gave up the facility's dual certification as a nursing facility and a skilled nursing facility. Chosen sought "to operate the facility as … 'a dual-certified nursing facility and skilled nursing facility to focus on providing continued services as (a) a sub-acute facility pursuant to Ind. Code § 12-22-2 and (b) a Nursing Home pursuant to Section 18.05.250 of the Highland Municipal Code.'"[2] To transition to primarily treating patients with addiction-related disorders as a sub-acute facility, Chosen had to obtain a new license from the Indiana Family and Social Services Administration. To secure this new license, Chosen needed a letter from the Town stating that Chosen's proposed use of the property satisfies local zoning requirements.

In July 2019, Ken Mika, the Town's Building Commissioner and Zoning Administrator, and Mark Herak, a Town Councilman, met with representatives of Chosen. Commissioner Mika informed those representatives that Chosen needed a use variance to convert the facility. To obtain a use variance, Chosen first would have to apply to the Board of Zoning Appeals ("BZA"). The BZA has "exclusive jurisdiction for" use variances and would provide a "favorable or unfavorable recommendation to" the Town Council as to whether a use variance should be granted.[3] The Town

---

[2] R.133 at 4 (quoting R.38 ¶ 17).

[3] R.56-1 at 270.

Council would then approve or disapprove the BZA's recommendation.[4]

Chosen did not seek a variance. Sometime in the fall of 2019, however, it requested a letter from the Town "affirming" that its proposed use conformed with the property's alleged "'existing legal nonconforming use' under Ordinance No. 645." *Chosen Consulting, LLC v. Town Council of Highland*, No. 2:20-CV-246, 2024 WL 3983742, at *3 (N.D. Ind. Aug. 28, 2024). The Town did not issue the requested letter. In March 2020, Commissioner Mika and Councilman Herak met with Chosen representative Melissa Durkin and reiterated that Chosen would have to seek a use variance. Chosen still did not do so.

In May 2020, the Town's attorney emailed a Chosen representative a draft letter. The attorney stated that he did not have approval to send the letter and therefore Chosen could not rely on it. This draft letter recited that in the Town's opinion, "the proposed use as a residential addiction treatment

---

[4] The Town's attorney also testified that Commissioner Mika and Councilman Herak suggested that Chosen file an application for rezoning. The Town's attorney stated that either rezoning or a use variance was necessary because "the initial approval [for the facility] … did not contemplate a substance abuse treatment facility." R.125-5 at 16. We understand the Town's zoning ordinance to permit Chosen to apply for rezoning by petitioning the Town's Plan Commission, which would thereafter consider the petition and provide a report to the Town Council. *See* R.56-1 at 264–65 (providing the zoning code procedure for pursuing an amendment to the zoning ordinance). The Town Council would then take final action. *See id.* at 264.

facility is permitted as a legal non-conforming use."[5] No final letter was ever issued.

On June 5, 2020, Durkin emailed Councilman Herak requesting a call to "understand where we are in the process."[6] Councilman Herak responded that day stating that he had "no knowledge of where the process is, as there is nothing happening."[7] Councilman Herak explained that there was nothing on the BZA's docket, and that "[t]he town attorney did say he didn't think it was a protected class and a drug rehab doesn't fall under nursing care."[8] He concluded, "I leave it to the lawyers."[9] Councilman Herak emailed Durkin again later that day stating that he was "unaware of any letter, either … being drafted or agreed to" and that the President of the Town Council, Mark Schocke, was one of three board members against the project.[10] Notably, three members of the Town Council composed a majority.

On June 9, 2020, Councilman Herak emailed Durkin informing her that President Schocke, whose wife taught at a school near the property, was "opposed to the idea" and "had 'brow beate[n] the town attorney and he's changed his opinion.'" *Id.* (quoting R.63-1 at 4). The next day, Councilman Herak emailed Durkin stating that "[t]he teachers at [the nearby] school are opposed, as well as the neighbors. I assume

---

[5] R.125-7 at 8.

[6] R.63-1 at 6.

[7] *Id.* at 5.

[8] *Id.*

[9] *Id.*

[10] *Id.*

they think that drug addicts will be sent there, able to leave at will, sign out themselves, [and] walk the neighborhood."[11]

**B.**

Chosen filed this action on June 26, 2020. It requested a "declaratory judgment regarding proper zoning," including declarations that "[t]he Property is properly zoned and may continue to operate as a legal nonconforming use" and that Chosen is "entitled to obtain the requested documentation of its legal nonconforming use."[12] The district court granted judgment on the pleadings on this count. It reasoned that it did not have jurisdiction because Chosen had not obtained a final decision from the local zoning authorities and therefore had not satisfied the finality requirement set forth in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). This claim is not before us on appeal.

The complaint also alleged that the Town has discriminated against disabled individuals by failing to provide the requested letter in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. Chosen requested compensatory and equitable relief including the entry of a permanent injunction ordering the Town "to stop obstructing [Chosen's] access to the Property for purposes of serving patients as a certified sub-acute facility and compelling issuance of the requested letter and [a] declaration that the proposed use of the Property as a sub-acute facility meets all zoning

---

[11] *Id.* at 3.

[12] R.38 at 9–11.

requirements."[13] The district court allowed this count to proceed to discovery, reasoning that Chosen had plausibly alleged that the Town had engaged in an unfair zoning approval process to inhibit the formal approval of Chosen's proposed use because of the residents' disabilities.

The Town later filed a motion for summary judgment on this count. The district court granted the motion. It first held that under our decision in *Discovery House, Inc. v. Consolidated City of Indianapolis*, 319 F.3d 277 (7th Cir. 2003), Chosen could not pursue a claim for damages under Title II of the ADA or Section 504 of the Rehabilitation Act. It next held that Chosen was required to exhaust its available remedies under local and state law before pursuing injunctive relief related to a local zoning process, and having failed to do so, Chosen could not obtain injunctive relief. The court indicated that Chosen had "to further pursue its request for zoning approval to the BZA and (if necessary) appeal any final decision entered by the BZA to the state courts, prior to seeking an injunction in federal court." *Chosen Consulting*, 2024 WL 3983742, at *7. The district court also clarified that even if a use variance were unnecessary, Chosen still had to address its current grievance to the BZA. It reasoned that the Town's "refusal to issue" the requested letter "would be subject to appeal before the [BZA], at least in the first instance." *Id.* The court stated that in the zoning context, a plaintiff must pursue available remedies under state law before proceeding in federal court.

Chosen appealed the district court's grant of summary judgment only as to its claim for injunctive relief under the ADA and the Rehabilitation Act.

---

[13] *Id.* at 9.

## II

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 891 (7th Cir. 2025). We construe the record in the light most favorable to Chosen, the nonmoving party, and draw all reasonable inferences in Chosen's favor. *See id.* Summary judgment is appropriate if the Town, "the movant[,] shows that there is no genuine dispute as to any material fact" and that the Town "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A.

The parties disagree as to whether Chosen's statutory discrimination claims, arising in the context of a local zoning dispute, are sufficiently ripe to warrant injunctive relief. The Supreme Court set forth specific ripeness requirements for Takings Clause claims in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In *Williamson County*, the Court required the respondent to obtain a final decision regarding the application of the relevant regulations to its property ("the finality requirement") and to seek compensation through the available state procedures ("the state-litigation requirement") before pursuing its Takings Clause claim in federal court. *Id.* at 186. The Supreme Court later dispensed with the state-litigation requirement in *Knick v. Township of Scott*, 588 U.S. 180 (2019). It "held that a plaintiff may bring a ripe federal takings claim in federal court, without first exhausting state remedies, as soon as a government takes his property for public use without paying for it." *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir.

2022) (internal quotation marks omitted) (quoting *Knick*, 588 U.S. at 184, 189).

Following *Knick*, the Supreme Court reaffirmed the validity of the finality requirement in *Pakdel v. City & County of San Francisco*, 594 U.S. 474 (2021) (per curiam). In *Pakdel*, San Francisco approved the petitioners' conversion of their property interest in a multiunit residential building after they agreed to offer their tenant a lifetime lease. *Id.* at 475–76. The petitioners later "requested that the city either excuse them from executing the lifetime lease or compensate them for the lease." *Id.* at 476. The city refused and informed the petitioners that their failure to execute a lifetime lease could result in an enforcement action. *Id.* The petitioners then brought a federal action "alleg[ing] that the lifetime-lease requirement was an unconstitutional regulatory taking." *Id.* The Ninth Circuit held that this claim was not ripe. *Id.* at 477 (citing *Pakdel v. City & County of San Francisco*, 952 F.3d 1157, 1163 (9th Cir. 2020)). It reasoned that the city's denial of the petitioners' requests for an exemption was not a final decision "because petitioners had made a belated request for an exemption at the end of the administrative process instead of timely seeking one 'through the prescribed procedures.'" *Id.* at 477–78 (quoting *Pakdel*, 952 F.3d at 1166–67).

The Supreme Court disagreed. It reasoned that a plaintiff need only show "that there is no question about how the regulations at issue apply to the particular land in question," and here, there was "no question about the city's position:" the petitioners had to execute a lifetime lease or face an enforcement action. *Id.* at 478 (citation modified) (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)). The Court explained that by forcing the petitioners to seek an exemption

through the prescribed state procedures, the Ninth Circuit im-
properly had required them to exhaust their claim. *Id.* at 479.

**B.**

Our court has read *Williamson County* broadly, *Forseth v.
Village of Sussex*, 199 F.3d 363, 370 (7th Cir. 2000), and has ap-
plied its finality requirement to various land-use claims other
than Takings Clause claims.[14] We have not yet addressed,
however, whether the *Williamson County* finality requirement
applies specifically to the type of ADA and Rehabilitation Act
claims Chosen brings here.

In resolving this issue, we are guided by our decision in
*United States v. Village of Palatine*, 37 F.3d 1230 (7th Cir. 1994).
In *Village of Palatine*, we applied the finality requirement to a
Fair Housing Act ("FHA") discrimination claim concerning a
group home for recovering alcoholics and substance abusers.
*Id.* at 1231–33. The organizers of the group home declined to
seek a special use approval, although they knew that the Vil-
lage's zoning ordinance required that they apply for one. *Id.*
at 1232. The Village later cited the home for code violations,
and the home requested an accommodation to allow it to
"continue to operate in its current condition." *Id.* The Village
informed the home that it had to apply for a special use ap-
proval, but the home refused to invoke the special use pro-
cess. *Id.* Instead, the corporation establishing the group home

---

[14] *See, e.g.*, *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1003–05 (7th
Cir. 2004) (applying the finality requirement to a Telecommunications Act
claim); *United States v. Vill. of Palatine*, 37 F.3d 1230, 1233 (7th Cir. 1994)
(applying the finality requirement to a Fair Housing Act claim); *Forseth v.
Vill. of Sussex*, 199 F.3d 363, 370 (7th Cir. 2000) (holding that the *Williamson
County* requirements apply to substantive due process claims).

"filed a complaint with the Department of Housing and Urban Development alleging that the [Village] had discriminated against [the home] by failing to make a reasonable accommodation in the Village's zoning laws." *Id.* The United States then brought a federal action against the Village under the FHA, which prohibits discrimination in housing based on handicap and defines discrimination to "include[] 'a refusal to make reasonable accommodations … when such accommodations may be necessary to afford [the handicapped] equal opportunity to use and enjoy a dwelling.'" *Id.* at 1232–33 (second alteration in original) (quoting 42 U.S.C. § 3604(f)(3)(B)). The United States, relying on this definition, claimed that "the Village did not make a reasonable accommodation in its application of its zoning laws" to the home. *Id.* Relying on *Williamson County*, we held that this claim was not ripe because the home had not requested special use approval, and until it did so, the Village could not authorize the home's use. *Id.* at 1233 (citing *Williamson Cnty.*, 473 U.S. at 193–94).

Although Chosen's discrimination claim was brought under the ADA and the Rehabilitation Act rather than the FHA, we see no meaningful difference from the situation that we encountered in *Village of Palatine* that would justify a different approach here. The rule in *Williamson County*, as modified in *Knick* and clarified in *Pakdel*, must govern here. Chosen posited at oral argument that *Williamson County* was "inapt" for its claims because the discrimination it alleges "is part and parcel of the zoning process."[15] But the plaintiff in *Village of Palatine* also alleged that the defendant's failure to provide the requested zoning approval constituted discrimination, and

---

[15] Oral Argument at 7:43–7:56.

we nevertheless applied *Williamson County*. Requiring Chosen to satisfy the *Williamson County* finality requirement is likewise appropriate.

Our conclusion is in accord with the Second Circuit's decision in *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118 (2d Cir. 2014). In *Sunrise Detox*, a developer intended to convert a former nursing home to a facility for people recovering from addiction. *Id.* at 119. The city's zoning ordinance required the facility to attain a special permit from the city's Common Council. *Id.* The developer applied for a special permit with the city's Department of Building, which considered the application complete and forwarded the proposal to the council. *Id.* at 120. Before the council acted, however, public opposition to the proposed facility mounted, and the developer supplemented its application. *Id.* The department's commissioner considered the supplemented application and revised the department's determination, informing the developer that it would need to seek a variance or appeal the department's determination to the Zoning Board of Appeals. *Id.* at 120–21. The developer then brought a federal action against the city "alleging intentional discrimination, disparate impact discrimination, and failure to grant a reasonable accommodation in violation of the" ADA. *Id.* at 119.

The Second Circuit affirmed the district court's judgment dismissing the developer's claims for lack of ripeness. *Id.* at 121, 124–25. It reasoned that the relief sought by the developer, "an injunction blocking the disapproval and authorizing construction of its project, … br[ought] the case squarely within the compass of *Williamson County* and its progeny." *Id.* at 123. Further, even if the department's commissioner had a discriminatory motive in revising the department's

determination, "that illegal act would not necessarily require, as a remedy," issuing a permit to the developer. *Id.* The Second Circuit went on to explain that if the developer "proceeds with its application, the rejection may be reversed, and the project may be permitted to proceed—or the application may be rejected on other, non-discriminatory grounds." *Id.* Only after the process was completed, however, would it be known whether the commissioner's allegedly discriminatory decision "had any effect at all on [the developer's] application." *Id.* The court ultimately pronounced "that a plaintiff alleging discrimination in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision." *Id.*

Like the developer in *Sunrise Detox*, Chosen has alleged no injury independent of the challenged land-use decision. Rather, Chosen seeks back-door authorization of its proposed use. Its request for an injunction ordering the Town "to stop obstructing [its] access to the Property for purposes of serving patients as a certified sub-acute facility and compelling issuance of the requested letter and [a] declaration that the proposed use of the Property as a sub-acute facility meets all zoning requirements"[16] "brings the case squarely within the compass of *Williamson County* and its progeny." *Id.* As in *Sunrise Detox*, applying the *Williamson County* finality requirement to Chosen's claim is appropriate.

We therefore hold that the *Williamson County* finality requirement applies to Chosen's claim for injunctive relief under Title II of the ADA and Section 504 of the Rehabilitation

---

[16] R.38 at 9.

Act. We proceed to determine whether Chosen has satisfied this requirement.

## C.

To satisfy the "relatively modest" finality requirement, Chosen must show "that there is no question about how the regulations at issue apply to the particular land in question." *Pakdel*, 594 U.S. at 478 (citation modified) (quoting *Suitum*, 520 U.S. at 739). The government must be committed to a final, conclusive position. *See id.* at 479–80. When "avenues still remain for the government to clarify or change its decision," the finality requirement is not satisfied. *See id.* at 480. As we have described, the Supreme Court determined that the finality requirement was satisfied in *Pakdel* because the city had adopted a final position: the petitioners had to execute a lifetime lease or face an enforcement action. *See id.* at 478, 480. By contrast, the Court held in *Williamson County* that the finality requirement was not satisfied because the developer could still seek a variance from the appeals board. *Knick*, 488 U.S. at 187–88 (citing *Williamson Cnty.*, 473 U.S. at 186–94).

The finality requirement has not been satisfied here because the Town may still issue the letter Chosen requests. Chosen simply has not invoked the procedures that would enable the Town to authorize Chosen's proposed use. *See id.*; *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1004 (7th Cir. 2004) (holding that Sprint's claim was not ripe because the board of zoning appeals did not completely foreclose Sprint from using a property for its intended use, and instead, the board's decisions "merely map[ped] a procedural route that Sprint [had to] take in order to proceed with its project"); *Vill. of Palatine*, 37 F.3d at 1233 (holding that because the group home did not apply for a special use approval, the Village

could not authorize its use of the property and thus the home's claim was not ripe).[17] Chosen must undertake the directed steps to attempt to obtain the Town's approval of its proposed use. Until it does so, "it is mere speculation whether [Chosen] even has an injury to complain of." *Sprint Spectrum*, 361 F.3d at 1004.

This case exemplifies the rationale underlying the finality requirement. The finality requirement "responds to the high degree of discretion characteristically possessed by land–use boards in softening the strictures of the general regulations they administer." *Suitum*, 520 U.S. at 738. "When such flexibility or discretion may be brought to bear on the permissible use of property as singular as a parcel of land, a sound judgment about what use will be allowed simply cannot be made by asking whether a parcel's characteristics or a proposal's details facially conform to the terms of the general use regulations." *Id.* at 738–39. Chosen's submission that its proposed use conforms with the property's existing "legal non-conforming use"[18] requests the federal courts to make such a preliminary judgment.[19] But the Town "may give back with one

---

[17] *See also Willan v. Dane County*, No. 21-1617, 2021 WL 4269922, at *3 (7th Cir. Sept. 20, 2021) (unpublished) (the plaintiffs' claims were not ripe because their allegations did "not suggest that they took any of the directed steps to obtain a zoning variance or a conditional-use permit, or that anyone at the County ever reached a final decision on whether a variance or permit would be approved if properly sought" (citing *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229–30 (10th Cir. 2021))).

[18] Appellants' Br. 6.

[19] We note that we also see no barrier to Chosen obtaining a final decision by filing a declaratory judgment action in state court for a determination of whether its proposed use qualifies as a legal non-conforming use. *See*

hand what [it has] taken with the other." *Sprint Spectrum*, 361 F.3d at 1004 (first citing *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 350 (1986); and then citing *Suitum*, 520 U.S. at 738). Until Chosen has properly pursued the Town's approval and the Town has decided whether it will permit Chosen's proposed use, this dispute is not ripe.

Finally, we address Chosen's assertions during oral argument that the Town attorney's draft letter "may not be a decision but … is certainly a statement" and that there "is a final statement of what [the Town's] decision would be" as to Chosen's proposed use.[20] First, the draft letter is just that: a draft. It is not a conclusive determination by the Town as to "how the 'regulations at issue apply to the particular land in question.'" *Pakdel*, 594 U.S. at 478 (quoting *Suitum*, 520 U.S. at 739). Nor is the Town's failure to issue Chosen's requested letter prior to any application by Chosen a final decision. Indeed, this situation mirrors that in *Williamson County*, where the county commission's refusal to approve the respondent's preliminary plat did not constitute a conclusive determination of whether the commission would allow the proposed development. 472 U.S. at 193–94. The commission's refusal prevented development without the necessary variances, but the

---

*Town of Avon v. Harville*, 718 N.E.2d 1194 (Ind. Ct. App. 1999). If Chosen were to attain such a declaratory judgment in its favor, and the Town still would not provide the requested letter, this refusal would indeed be a final decision. In such a case, the Town would be taking the final, conclusive position that it would not provide the letter even though Chosen's proposed use satisfies local zoning requirements as a legal non-conforming use. *See Pakdel v. City & County of San Francisco*, 594 U.S. 474, 478–79 (2021) (per curiam).

[20] Oral Argument at 6:23–6:27, 7:16–7:19.

development was still possible once the variances were obtained. *Id.* The Supreme Court held that the commission's refusal was not a final decision. *Id.* at 194.[21] So too here.

Because the Town has not adopted a final, conclusive position, Chosen's claim for injunctive relief under the ADA and the Rehabilitation Act is not ripe for review.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED

---

[21] *See also Sprint Spectrum*, 361 F.3d at 1000, 1004 (holding that the BZA's finding that Sprint's proposed use was not permitted under the zoning ordinance and resulting requirement that Sprint seek a special use permit was not a final decision in light of Sprint's ability to apply for a permit); *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 124 (2d Cir. 2014) (concluding that the city's advisement that the proposed facility did not qualify as a "community residence" and the city's failure to take further action as to the developer's application were not final decisions given the "administrative avenues for relief outlined in the zoning ordinance and the commissioner's letter"); *Willan*, 2021 WL 4269922, at *1, 3 (holding that the county's rejections of the plaintiffs' requests to be in a business zone and for a construction permit were not final decisions; rather, the plaintiffs had to obtain a zoning variance or a conditional-use permit as directed by the county).