EPPLER, Appellant,

v.

CITY OF CLEVELAND et al., Appellees.

[Cite as *Eppler v. Cleveland* (2001), 142 Ohio App.3d 91.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76372.

Decided April 2, 2001.

*Kramer & Associates* and *Edward G. Kramer*; *Fair Housing Law Clinic* and *Jonathan E. Sheir*, for appellant.

*Jon R. Sinclair* and *Pinkey S. Carr*, Assistant Directors of Law, and *Matthew T. Brady*, Senior Litigation Counsel, for appellees.

ANNE L. KILBANE, Judge.

This is an appeal from an order of Judge Timothy McGinty granting summary judgment to appellees city of Cleveland Board of Zoning Appeals ("board") and the city of Cleveland (collectively "city") on the housing discrimination claims of appellant Mark Eppler. Eppler claims that the city violated the federal Fair Housing Act, Section 3604(f), Title 42, U.S.Code, when it denied him a variance to permit transitional housing for the homeless mentally ill on property zoned for semi-industrial use. We do not agree and affirm the order because Eppler failed to establish the elements of his claim, but not because of the judge's finding that his claim was barred by the doctrine of res judicata.

Eppler owned a one-story building at 5230 St. Clair Avenue in Cleveland on land zoned as semi-industrial, meaning that it is appropriate for commercial, but not residential, uses, because it is within two hundred feet of an area zoned general industrial. The general industrial area is, in fact, directly across St. Clair, on the north side, while Eppler's building is on the south side. He purchased the property in 1992 and operates a court reporting firm in the rear of the building. Between 1992 and 1996 he attempted to rent the front portion of the building with little success until he reached a lease agreement with Cleveland Health Care for the Homeless ("CHCH"), contingent upon the approval of zoning variances to accommodate CHCH's proposed use of the property: a twenty-five bed transitional housing project for mentally ill homeless persons.

The building commissioner denied Eppler's application for variances, and the board held a hearing on Eppler's requests on October 14, 1996. Eppler needed five zoning variances before the property could be used as CHCH intended, including (1) allowing a residential use within two hundred feet of a district zoned general industrial; (2) a waiver of the eight-foot sideyard requirement for residential buildings, because the building abuts the property lines on two sides; (3) a waiver of the twenty-foot rear yard requirement for residential buildings, because the building's rear yard space is only ten feet deep; (4) a waiver of landscaping provisions for the building and parking lot; and (5) a waiver of an eight-foot landscaped barrier requirement between the parking lot and the lot

lines on the east (E. 52nd Street) and south sides. At the hearing, Eppler and CHCH stated that they could comply with the landscaping and barrier requirements for the parking lot but they would still need variances for the sideyard requirements and the two-hundred-foot-separation requirement.

An architect testified about modifications necessary to use the building as planned, which necessitated skylights and air vents to provide natural light and fresh air because the building code prohibited windows on the side walls located on lot lines. The attorney for Eppler and CHCH stated that the residents would be driven to and from the building and would not need any yard space because they will not be permitted outside the premises. A representative of CHCH testified that Eppler's building was uniquely suited for its projected use, because housing all of the residents in a single room on a single floor would make supervision easier. That person also testified that the residents would be more comfortable in this semi-industrial/industrial setting than in a residential neighborhood, because in a residential setting they would be more likely to feel targeted as outsiders than they would on a main street.

After several residents of the surrounding community spoke at the hearing and requested denial of the variances, Eppler and CHCH argued that such denial would violate the federal Fair Housing Act, Section 3604(f), Title 42, U.S.Code as a discriminatory denial of reasonable accommodations necessary to ensure equal housing opportunity to the mentally ill. Eppler and CHCH contended that denial of the variances necessarily would be based on the objections of community members who spoke out against locating a residence for the mentally ill in their neighborhood.

The board denied the requested variances on October 14, 1996, and denied CHCH's and Eppler's petition for rehearing. On November 18, 1996, Eppler filed a complaint in the United States District Court, alleging the the city violated both the federal fair housing laws and R.C. Chapter 4112, in denying his request for the variances. On November 19, 1996, CHCH and Eppler filed a notice of appeal in the Cuyahoga County Court of Common Pleas, case No. 319604, referencing only the board's decision; a second, C.P. case No. 319612, filed November 27, 1996, appealed the denial of the petition for rehearing. Eppler dismissed without prejudice his district court case on December 1, 1997. On February 26, 1997, the judge dismissed, with prejudice, the appeal in C.P. case No. 319604 citing failure to file the notice of appeal within thirty days. Eppler appealed that dismissal to this court in App. No. 72291 but it was dismissed, on June 9, 1997 for failure to file a brief. The city filed a motion to dismiss C.P. case No. 319612 on the basis that the notice of appeal was not timely filed. Although granted additional time to respond, Eppler failed to file his brief by June 8, 1997

and he dismissed that appeal with prejudice pursuant to a stipulation on July 8, 1997.

Sometime around December 1996, CHCH found a nearby location for its facility at 1361 East 55th Street in Cleveland, and requested variances to allow building there. On June 23, 1997, the Board approved the requested variances at that site, waiving a fifty-percent-building-to-lot limitation, and allowing a five-foot side yard instead of the eight feet otherwise required. Under a claim that he had lost $75,000 in lost rents because the city had failed to provide for reasonable accommodations to the zoning laws, Eppler filed an administrative charge with the United States Department of Housing and Urban Development on November 4, 1997. On September 9, 1998, he filed the underlying action alleging violations of the Fair Housing Act and R.C. Chapter 4112, and seeking monetary damages.

The parties filed cross-motions for summary judgment and on April 8, 1999, the judge denied Eppler's motion and granted summary judgment to the city, finding that Eppler's action was barred by the doctrine of res judicata because he had two prior opportunities to litigate his claims.

Eppler's first assignment of error states:

"I. The trial court should not have granted the defendants' motion for summary judgment."

■ We review the grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to Eppler, entitles the city to judgment as a matter of law. Civ.R. 56(C); *Druso v. Bank One of Columbus* (1997), 124 Ohio App.3d 125, 130, 705 N.E.2d 717, 720. The first issue raised is whether the judge correctly determined that Eppler's action was barred by the doctrine of res judicata. The city contends that Eppler's action is barred because he could have had his Fair Housing Act claim resolved through administrative appeals from the board's decision and he lost the opportunity to raise the claim when he failed to pursue those appeals. We disagree.

The Fair Housing Act allows the filing of a civil action for damages arising from a discriminatory housing practice. Sections 3613(a) and (c), Title 42, U.S.Code. Eppler filed this complaint alleging damages in the form of rents lost after the board denied his request for variances. In his application to the board and his subsequent appeals from the Board's decision he requested specific relief—he wanted the variances approved so he could lease the space to CHCH. Although he claimed that denial of the variances would violate the Fair Housing Act, he could not have sought damages for that violation before the board or in his earlier appeals.

■ While the doctrine of res judicata acts to bar any claim that could have been litigated in earlier proceedings, *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229, Eppler's claim for damages could not have been litigated in earlier proceedings because any claimed violation could not have occurred until the board made its decision, and Eppler would not be allowed to raise a new claim for damages in his administrative appeals. Therefore, a separate action alleging a discriminatory housing practice was appropriate and consistent with the statutory scheme.

■ The city does not argue that Eppler failed to exhaust his administrative remedies by failing to pursue his administrative appeals, nor does it claim that Eppler should be barred from raising particular issues due to collateral estoppel. Although related to the city's arguments of claim preclusion, these are distinct and complex issues that are not conclusively resolved through any quick examination of the law. Therefore, we will not address such arguments, as they require briefing and argument not provided to us. We note only that our review of the law does not immediately suggest that Eppler would be prohibited from pursuing his claim under either theory in this instance.

■ The Fair Housing Act provides for both administrative enforcement by the Secretary of Housing and Urban Development as well as private causes of action. Sections 3610 through 3613, Title 42, U.S.Code. A private action is allowed to go forward regardless of whether an administrative complaint has been filed. Section 3613(a)(2), Title 42, U.S.Code. Although Eppler probably was required to apply for variances before filing a discrimination claim,[1] it is doubtful whether his failure to continue his administrative appeals after CHCH found a new location can be used to deny his action here because Eppler no longer had reason to seek the specific relief requested in those proceedings. Furthermore, we doubt whether the resolution of the Fair Housing Act claim in the administrative appeals could have had preclusive effect on a subsequent civil action. Again, the federal scheme contemplates a separate action to determine whether a discriminatory act has occurred. Although there is some authority stating that certain factual issues could have preclusive effect,[2] Eppler would be allowed to discover and present additional facts in his civil action and argue the merits of the discrimination claim completely, and the claim would be subject to a different standard of proof. See, e.g., *Reeves v. Sanderson Plumbing Prod., Inc.*

---

1. See *Oxford House–A v. City of University City* (C.A.8, 1996), 87 F.3d 1022, 1024–1025 ("The Oxford Houses must give the City a chance to accommodate them through the City's established procedures for adjusting the zoning code.").

2. See *Bryant Woods Inn, Inc. v. Howard Cty.* (C.A.4, 1997), 124 F.3d 597, 604 (failure to appeal agency ruling gives its findings preclusive effect).

(2000), 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105. In order to apply collateral estoppel principles here, we would need to be convinced that Eppler had a full and fair opportunity to litigate identified factual and legal issues before the board—a finding we would hesitate to make when the underlying claim did not arise until the board actually denied Eppler's variance requests.

Despite the fact that Eppler's claim was not barred by the doctrine of res judicata, the judge's decision must be affirmed if sustainable for other reasons. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174; *Rothstein v. Montefiore Home* (1996), 116 Ohio App.3d 775, 780, 689 N.E.2d 108, 111. The city also argued that it was entitled to summary judgment on the merits of Eppler's claim. We agree.

Eppler's claim is based on Section 3604(f), Title 42, U.S.Code, which prohibits discrimination on the basis of disability. Eppler claims specifically that the board's actions violated Section 3604(f)(3)(B), Title 42, U.S.Code which defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling * * *."

In order to defeat summary judgment, Eppler must show a dispute of material fact concerning each element of his claim. *Csejpes v. Cleveland Catholic Diocese* (1996), 109 Ohio App.3d 533, 536, 672 N.E.2d 724, 726. In this case, Eppler must show that the variances were (1) reasonable and (2) necessary to allow members of a protected class equal housing opportunity. *Smith & Lee Assoc., Inc. v. Taylor, Michigan* (C.A.6, 1996), 102 F.3d 781, 794. Eppler cannot establish either element.

Eppler argues that the requested variances were reasonable accommodations under the Fair Housing Act because they do not require a fundamental alteration in the nature of a program or impose undue financial and administrative burdens. *Id.* at 795, quoting *Southeastern Community College v. Davis* (1979), 442 U.S. 397, 410, 412, 99 S.Ct. 2361, 2369, 2370, 60 L.Ed.2d 980, 990, 992. Although the threshold requirement for reasonable accommodations is relatively low, the evidence here does show a "fundamental alteration" in the city's zoning practices.

Eppler concedes that the city had a history of denying any variance to its two-hundred-foot buffer between general industrial and residential uses but argued to the board that his property presented the rare case where an exception should be allowed, citing the fact that nearby buildings were used for residential purposes despite being within two hundred feet of the general industrial district. Eppler also argued that the exception would not upset the character of the neighborhood because his property was at the edge of both residential and industrial districts,

Eppler argued that the neighborhood would not be adversely affected if he used his property for residential purposes and that the residents of the proposed project would not be adversely affected by their proximity to the industrial area, nor would they file complaints about the industrial area.

Even if the city ethically, legally, and properly could extract a waiver from Eppler or CHCH, concerning the proximity of the industrial area, it still had ample reason to preserve the fundamental policy of maintaining a minimum distance between industrial and residential uses. The fact that other buildings were used for residential purposes within the two hundred foot buffer zone did not affect the city's policy; the evidence showed that the nonconforming uses either preceded the zoning regulations and thus were grandfathered, or that those buildings were actively violating zoning regulations. This is far different from the city approving such uses by granting zoning variances. By consistently denying such variances, the city expressed its desire to maintain the buffer between industrial and residential districts, to protect both residents and businesses. The City's strict adherence to its policy reflects its importance; one can easily imagine that any variation from the policy could result in a slippery slope quandary, whereby even the two-hundred-foot separation could be lost completely. It is not reasonable to expect the city to make an exception to this policy and subject itself to further requests and challenges from property owners seeking alternate uses for property located in buffer zones.

We also find that the variances were not necessary to provide equal housing opportunity to mentally ill individuals. Eppler argues that he need not show actual necessity but only that the accommodation may be necessary to provide equal housing opportunity. Section 3604(f)(3)(B), Title 42, U.S.Code. Although he does not explain the significance of his emphasis on the phrase may be necessary, he implies that he is required to show only the possibility of a link between the accommodation and equal housing opportunity. We reject Eppler's interpretation. In *Smith & Lee, supra*, the court stated that, in order to establish necessity, the [p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice. *Smith & Lee*, 102 F.3d at 795. This is a preponderance standard, similar to Eppler's burden on all other elements of his claim.

Eppler cannot satisfy his burden at trial because he cannot show the denial of a housing opportunity available to other members of the community. The evidence shows that the two-hundred-foot separation requirement would be enforced regardless of the building's potential residents. Eppler cannot prove discrimination without a showing that a residence in his building would be available to people who are not mentally ill. See *Forest City Daly Hous., Inc. v. N. Hempstead* (C.A.2, 1999), 175 F.3d 144, 151–152 (accommodations not necessary

to provide equal opportunity when "persons without disabilities do not have opportunities analogous to those being sought here"). The parties agree that the city would deny the two-hundred-foot variance to anyone who sought it and, therefore, the mentally ill clients of CHCH did not lose an equal opportunity to live in the housing of their choice, because no one else would have been allowed to reside there, even if they chose to do so.

Eppler correctly claims that CHCH's ability to find another location for its facility in the same general area does not eliminate his discrimination claim, but he overlooks the fact that the city did not unfairly discriminate in denying the requested variances for his property. The new location for the transitional housing was not within the two-hundred-foot buffer zone between residential and general industrial zones, while Eppler's property was in the buffer zone, and thus no residential use was allowed. The city's discretion was not unfairly discriminatory.

Eppler also argues that the testimony of neighborhood residents who opposed the facility is sufficient evidence that the board's decision was motivated by some discriminatory animus, and claims that the hearing transcript presents a prima-facie case of discriminatory treatment. We reject this argument not only because we cannot arbitrarily assign discriminatory motives to the board based on the testimony presented at the hearing, but also because the board could satisfy its burden of showing nondiscriminatory reasons even if Eppler made such a prima-facie case.

 An intentional housing discrimination claim based on disability must show that the denial was based at least in part on the disability. *Smith & Lee*, 102 F.3d at 790. If the plaintiff satisfies this burden, the defendant bears the burden of showing that it would have made the same decision even if it had not been motivated by an unlawful purpose[.] *Id.* at 791. Eppler contends that, because direct evidence of intentional discrimination is seldom available, the residents' testimony at the hearing is sufficient to cast doubt on the board's motivation. He fails to recognize, however, that he must show some link between the circumstantial evidence and the element to be proven. Eppler's cited authorities generally show some evidence that decision makers were improperly influenced by community opposition. See, *e.g.*, *Oxford House–Evergreen v. Plainfield* (D.N.J.1991), 769 F.Supp. 1329, 1343 (zoning officer initially approved proposed use but reversed decision after community opposition). There is no link present here, for despite the fact that neighborhood residents opposed the proposal at the hearing, the board members continually requested that CHCH and Eppler address the requested variances when making their presentations. The board's concern during the hearing was whether the building was suitable for residential use, even when modified for those purposes. Nothing in the record

suggests any link between the board's decision and any discriminatory motive presented by community opposition.

Finally, even if some evidence suggested that the board might have considered waiving the two-hundred-foot separation requirement, we note that the board also was entitled to assess the nature and character of Eppler's proposed use in deciding whether to grant requested variances. Even if the board considered granting the two-hundred-foot variance, the proposed facility contemplated a single room with twenty-five beds for mentally ill residents who were not allowed to leave a building equipped with skylights instead of windows. The board justifiably could have rejected the variances because it was unimpressed with the proposal and not because of any discriminatory motive. The board easily could have determined that a windowless, jail-like facility was not the proper residential setting for anyone, and was not a favorable means of housing mentally ill persons in an attempt to aid their transition to society. Eppler, therefore, not only failed to show a discriminatory motivation, but the city was able to show a nondiscriminatory justification even if some animus could be shown. The first assignment of error is without merit.

Eppler's second assignment of error states:

"II. The trial court should have granted the plaintiff's motion for summary judgment."

Because we reject Eppler's first assignment of error and find that the judge properly granted summary judgment to the city, we necessarily reject this assignment of error as well.

*Judgment affirmed.*

KARPINSKI, J., concurs.

DYKE, A.J., concurs separately.

DYKE, Administrative Judge, concurring.

I write separately to emphasize that as a general rule it is not my practice to name the trial judge in my appellate opinions. On appeal, our focus is whether particular assignments of error are meritorious and whether reversible error has occurred. App.R. 12. Thus, the focus of our review is the judicial rulings which are brought before us. In completing our review, we are to apply a body of orderly procedures and decisional law. Personal reference is not relevant.

Moreover:

"The bounds of the law in a given case are often difficult to ascertain. The language of legislative enactments and judicial opinions may be uncertain as applied to varying factual situations. The limits and specific meaning of appar-

ently relevant law may be made doubtful by changing or developing constitutional interpretations, inadequately expressed statutes or judicial opinions, and changing public and judicial attitudes. Certainty of law ranges from well-settled rules through areas of conflicting authority to areas without precedent." Code of Professional Responsibility, EC 7–2.

In short, we are not a court of last resort and a pronouncement from this court that error has occurred may in fact be overturned by the Supreme Court in subsequent review.

Finally, we must be mindful that judges are not wholly free to defend themselves and that focusing upon the judge rather than the decision itself could unfairly affect public confidence in the judicial system and could appear to be an expression of partiality. Accordingly, I adhere to the policy adopted by this court.