_____

No. 94-1600EM

_____

Oxford House-C, an                          *
unincorporated association;                 *
Oxford House, Inc., a Delaware              *
not-for-profit corporation;                 *
Oxford House-W, an                          *
unincorporated association;                 *
Missouri Department of Mental               *
Health, Division of Alcohol &               *
Drug Abuse; Missouri Department             *
of Mental Health,                           *
                                            *
            Plaintiffs-Appellees,           *
                                            *
       v.                                   *
                                            *
City of St. Louis, a Body                   *
Corporate,                                  *
                                            *
            Defendant-Appellant.            *
_____           *    Appeals from the United States
                                            *    District Court for the Eastern
Missouri Municipal League; City             *    District of Missouri.
of Columbia, Missouri; City of              *
Clayton, Missouri; The National             *
Fair Housing Alliance; The                  *
Judge David L. Bazelon Center               *
for Mental Health Law; United               *
States of America; American                 *
Civil Liberties Union, of                   *
Eastern Missouri,                           *
                                            *
            Amicus Curiae.                   *


_____

No. 94-3073EM

_____

Oxford House-C, an                          *
unincorporated association;                 *
Oxford House, Inc., a Delaware              *
not-for-profit corporation;                 *
Oxford House-W, an                          *
unincorporated association;                 *
Missouri Department of Mental               *
Health, Division of Alcohol &               *
Drug Abuse; Missouri Department             *

of Mental Health,                    *
                                     *
        Plaintiffs-Appellees,        *
                                     *
     v.                              *
                                     *
City of St. Louis, a Body            *
Corporate,                           *
                                     *
        Defendant-Appellant.         *
                          _____

                Submitted:  September 12, 1995

                  Filed:  February 23, 1996
                          _____

Before FAGG, HENLEY, and HANSEN, Circuit Judges.
                          _____


FAGG, Circuit Judge.


     In this handicap discrimination case, we consider whether the
City of St. Louis violated the federal Fair Housing Act and
Rehabilitation Act by enforcing the City's zoning code to limit the
number of residents in two group homes for recovering substance
abusers.  We conclude the City acted lawfully.


     Oxford House-C and Oxford House-W are self-supporting, self-
governing group homes for recovering alcoholics and drug addicts in
the City of St. Louis.  The Oxford Houses provide a family-like
atmosphere in which the residents support and encourage each other
to remain clean and sober, and immediately expel any resident who
uses drugs or alcohol.  The Missouri Department of Mental Health,
Division of Alcohol and Drug Abuse (DMH/ADA), helped establish the
Oxford Houses and provides them with technical support.  The houses
also receive assistance from Oxford House, Inc., a national
organization of Oxford Houses across the country.


     Oxford House-C and Oxford House-W are located in St. Louis
neighborhoods zoned for single family dwellings.  The city zoning

-2-

code's definition of single family dwelling includes group homes with eight or fewer unrelated handicapped residents.  St. Louis, Mo., Rev. Code tit. 26, § 26.20.020(A)(1) (1994).  After city inspections revealed that more than eight recovering men were living at each Oxford House, the City cited the houses for violating the eight-person limit.

Rather than applying for a variance excepting them from the eight-person rule, the Oxford Houses, the DMH/ADA, and Oxford House, Inc. (collectively Oxford House) brought this lawsuit against the City, contending the City's attempt to enforce the rule violated the Fair Housing Act, as amended, 42 U.S.C. §§ 3601-3631 (1988), section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (1994), and other federal laws.  The City brought a counterclaim asking the district court to enjoin the Oxford Houses from violating the City's ordinances.  Holding the City had violated the Fair Housing Act and the Rehabilitation Act by enforcing the eight-member limit against the Oxford Houses, the district court enjoined the City from using its zoning code to prevent the Oxford Houses from operating with their existing number of residents, ten in Oxford House-C and twelve in Oxford House-W.  The district court also denied the City's counterclaim.  <u>Oxford House-C v. City of St. Louis</u>, 843 F. Supp. 1556, 1584 (E.D. Mo. 1994).  The City appeals.  We reverse the judgment for Oxford House, vacate the injunction, and remand the counterclaim for further consideration.

We first review the district court's decision that the City violated the Fair Housing Act.  Attempting to avoid the Act's requirements altogether, the City contends Congress exceeded its authority under the Commerce Clause by prohibiting handicap discrimination in the 1988 amendments to the Act.  We disagree.  Congress had a rational basis for deciding that housing discrimination against the handicapped, like other forms of housing discrimination, has a substantial effect on interstate commerce.  <u>See</u> <u>Morgan v. Secretary of Hous. & Urban Dev.</u>, 985 F.2d 1451, 1455

-3-

(10th Cir. 1993). We also reject the City's contention that under 42 U.S.C. § 3607(b)(1), the City's limits on the number of unrelated people who can live together in a single family residential zone are exempt from the Act's requirements. The Supreme Court recently held § 3607(b)(1) only exempts total occupancy limits intended to prevent overcrowding in living quarters, not ordinances like the City's that are designed to promote the family character of a neighborhood. City of Edmonds v. Oxford House, Inc., 115 S. Ct. 1776, 1779 (1995). In short, the City must comply with the Act.

The Act prohibits the City from making a dwelling unavailable to handicapped people on the basis of their handicap. 42 U.S.C. § 3604(f)(1). In fact, the Act requires the City to make reasonable accommodations in its generally applicable zoning ordinances when necessary to give a handicapped person "equal opportunity to use and enjoy a dwelling." Id. § 3604(f)(3)(B); Smith & Lee Assocs., Inc. v. City of Taylor, 13 F.3d 920, 924 (6th Cir. 1993). The Act also prohibits the City from interfering with handicapped individuals' exercise of their equal housing rights. 42 U.S.C. § 3617. The City does not contest the district court's conclusion that the Oxford House residents are handicapped within the meaning of the Fair Housing Act because they are recovering addicts. The issue is whether the City has unlawfully discriminated against, failed to accommodate, and interfered with the housing rights of these handicapped men.

Rather than discriminating against Oxford House residents, the City's zoning code favors them on its face. The zoning code allows only three unrelated, nonhandicapped people to reside together in a single family zone, but allows group homes to have up to eight handicapped residents. St. Louis, Mo., Rev. Code. tit. 26, §§ 26.08.160, 26.20.020(A)(1) (1994). Oxford House's own expert witness testified Oxford Houses with eight residents can provide significant therapeutic benefits for their members. The district

-4-

court nevertheless found the City's zoning ordinances are discriminatory because the eight-person limit would destroy the financial viability of many Oxford Houses, and recovering addicts need this kind of group home. Even if the eight-person rule causes some financial hardship for Oxford Houses, however, the rule does not violate the Fair Housing Act if the City had a rational basis for enacting the rule. Familystyle of St. Paul, Inc. v. City of St. Paul, 923 F.2d 91, 94 (8th Cir. 1991).

We conclude the eight-person rule is rational. Cities have a legitimate interest in decreasing congestion, traffic, and noise in residential areas, and ordinances restricting the number of unrelated people who may occupy a single family residence are reasonably related to these legitimate goals. Village of Belle Terre v. Boraas, 416 U.S. 1, 9 (1974). The City does not need to assert a specific reason for choosing eight as the cut-off point, rather than ten or twelve. "[E]very line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function." Id. at 8. We conclude the City's eight-person restriction has a rational basis and thus is valid under the Fair Housing Act. Familystyle, 923 F.2d at 94.

The district court found the City discriminated against the Oxford Houses by singling them out for zoning inspections and enforcement proceedings because of the residents' handicap. This finding is clearly erroneous because Oxford House did not show the City ignored zoning violations by nonhandicapped people. See Fed. R. Civ. P. 52(a). Although Oxford House presented evidence that the City did not take action against certain groups of more than three unrelated, nonhandicapped people residing together in single family zones, Oxford House did not show that these other groups were not entitled to reside in single family zones based on the zoning code's exception for valid pre-existing uses. See St. Louis, Mo., Rev. Code tit. 26, §§ 26.16.050-.060 (1994). At any

-5-

rate, Oxford House did not show anyone in the building inspector's office knew of the alleged zoning violations. The parties agree the City never received complaints about the groups Oxford House claims were violating the zoning code.

Having concluded Oxford House did not show the City treated the Oxford Houses differently from any other group, we believe the City's enforcement actions were lawful regardless of whether some City officials harbor prejudice or unfounded fears about recovering addicts. Because the district court found the City's actions were motivated by bias and stereotypes, however, we will briefly discuss the evidence of discriminatory intent. At trial, Oxford House presented testimony that one of the Mayor's assistants stated Oxford Houses might cause flight from the City. Also, when Oxford House's counsel asked the City's Zoning Administrator whether he would want to live next door to an Oxford House, the Zoning Administrator said no and expressed concern about transiency and property values. We do not believe these isolated comments reveal City officials enforced the zoning code against the Oxford Houses because of the residents' handicap, especially considering the Oxford Houses were plainly in violation of a valid zoning rule and City officials have a duty to ensure compliance. Oxford House also presented evidence that the inspectors who visited the Oxford Houses were aware of community opposition to the houses and hoped to discover zoning violations. Because the inspectors do not hold policymaking positions, their conduct and remarks tell us little about why City officials decided to take action against the Oxford Houses. Anyway, the district court took the inspectors' actions and comments out of context. Overall, we conclude the district court committed clear error in finding the City enforced the zoning code against the Oxford Houses because the residents are recovering addicts. We find no unlawful discrimination under the Fair Housing Act, either in the eight-person limit or in the City's enforcement activities.

Also, the City did not fail to accommodate the Oxford Houses as the Act requires.  See 42 U.S.C. § 3604(f)(3)(B).  The Oxford Houses want the City to let them operate with more than eight residents.  The City has consistently said it cannot make an exception to the zoning code unless the Oxford Houses apply to the City's Board of Adjustments for a variance, see St. Louis, Mo., Rev. Code tit. 26, § 26.84.050(D) (1994), and the Oxford Houses refuse to apply.  Their refusal is fatal to their reasonable accommodation claim.  The Oxford Houses must give the City a chance to accommodate them through the City's established procedures for adjusting the zoning code.  See United States v. Village of Palatine, 37 F.3d 1230, 1233 (7th Cir. 1994); Oxford House, Inc. v. City of Virginia Beach, 825 F. Supp. 1251, 1261 (E.D. Va. 1993).  The Fair Housing Act does not "insulate [the Oxford House residents] from legitimate inquiries designed to enable local authorities to make informed decisions on zoning issues." City of Virginia Beach, 825 F. Supp. at 1262.  Congress did not intend for the Act to remove handicapped people from the "normal and usual incidents of citizenship, such as participation in the public components of zoning decisions, to the extent that participation is required of all citizens whether or not they are handicapped."  Id. In our view, Congress also did not intend the federal courts to act as zoning boards by deciding fact-intensive accommodation issues in the first instance.  Id. at 1261.

The district court decided the Oxford Houses should not have to apply for variances because the City is certain to deny their applications.  See Village of Palatine, 37 F.3d at 1234.  Oxford House presented evidence that some neighbors of the Oxford Houses have concerns and complaints about the houses, and that the alderman representing the neighborhoods where the Oxford Houses are located does not want the houses to have more than eight residents. The record shows the Board of Adjustments has granted variances despite opposition from neighbors and aldermen, however.  Having carefully reviewed the record, we conclude the district court

-7-

committed clear error in finding it would be futile for the Oxford Houses to apply for variances. Thus, the Oxford Houses must apply if they want the City to accommodate them. We express no opinion about whether the Fair Housing Act would require the City to grant variances for the Oxford Houses if they apply.

Because the City did not unlawfully discriminate against the Oxford House residents or refuse to accommodate them, the City did not interfere with the residents' equal housing rights by enforcing the eight-person rule against them, see 42 U.S.C. § 3617. Further, because the City did not limit the number of Oxford House residents "solely by reason of [their] disability" and the residents did not request an exception to the eight-person limit, the City did not violate the Rehabilitation Act. See 29 U.S.C. § 794(a); Lue v. Moore, 43 F.3d 1203, 1206 (8th Cir. 1994). Having concluded the City acted lawfully, we remand the City's counterclaim seeking enforcement of its ordinances for further consideration.

In conclusion, we reverse the judgment in favor of Oxford House on the Fair Housing Act and Rehabilitation Act claims, vacate the injunction prohibiting the City from enforcing its eight-person zoning restriction against the Oxford Houses, and remand the City's counterclaim. Because Oxford House is no longer a prevailing party, we also reverse the award of fees and costs to Oxford House. 42 U.S.C. § 3613(c)(2).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-