**FAIR HOUSING ADVOCATES ASSN., Plaintiff,**

v.

**CITY OF RICHMOND HEIGHTS, et al., Defendants.**

**No. 1:96–CV–1438.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 24, 1998.

Andrew L. Margolius, Cleveland, OH, for Fair Housing Advocates Ass'n.

R. Todd Hunt, Vincent L. Cheverine, Walter & Haverfield, Cleveland, OH, for City of Richmond Heights, Ohio.

Hilary S. Taylor, John Stephen Kluznik, Sr., Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, Alan E. Johnson, Leo R. Ward, Ward & Associates, Cleveland, OH, for City of Warrensville Heights, Ohio.

Alan E. Johnson, Leo R. Ward, Ward & Associates, Cleveland, OH, Patrick Francis Roche, Sr., Davis & Young, Cleveland, OH, for City of Fairview Park, Ohio.

Katherine Louise Lang Bettasso, Charles E. Merchant, City Of Bedford Heights, Department of Law, Bedford Heights, OH, for City of Bedford Heights, Ohio.

## JUDGMENT

GWIN, District Judge.

This case came on for trial before the Court on March 16, 1998, after the parties waived trial by jury. After hearing the evidence and observing the demeanor of the witnesses, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. This civil action is brought by the plaintiff, Fair Housing Advocates Association ("Fair Housing Advocates"), against defendants City of Bedford Heights ("Bedford Heights"), City of Fairview Park ("Fairview Park"), and City of Warrensville Heights ("Warrensville Heights"). Fair Housing Advocates challenges occupancy ordinances enacted as part of each respective city's Housing Code.

2. The ordinances of defendant municipalities limit the total number of occupants in an apartment on the basis of minimum square footage per person.

3. None of the square footage restrictions in the occupancy ordinances of the defendant municipalities facially discriminate on a familial basis.

4. The City of Bedford Heights, City of Fairview Park and City of Warrensville Heights do not own, operate or rent apartments within their respective municipalities.

5. Each of the defendants' occupancy ordinances identifies that square footage is based on habitable space.

a. The Bedford Heights ordinances define habitable floor area as:

1383.12 HABITABLE ROOM.

"Habitable room" means a room or enclosed floor space used or intended to be used for living, sleeping or eating purposes, but excludes the following:

kitchens, bathrooms, toilet rooms, laundries, pantries, dressing rooms, storage spaces, foyers, hallways, utility rooms, boiler rooms, heater rooms, basement recreation rooms, interior rooms not provided with natural light and ventilation, and special purpose rooms shared by more than one dwelling unit.

1387.13 HABITABLE FLOOR AREA DEFINED.

"Habitable floor area" means the floor area in any room in any multiple dwelling, which floor area is to be contained within such multiple dwelling or part thereof, in order to meet the minimum requirements of this Code. No floor area shall be considered habitable unless such area meets the requirements set forth in Section 1383.12.

b. The Fairview Park occupancy ordinance defines "habitable floor area" as "the floor area in any room in any dwelling, dwelling structure or multiple dwelling, which floor area is required to be contained within such dwelling, dwelling structure or multiple dwelling, or part thereof, in order to meet the minimum requirements of this Housing Code. Areas and dimensions are to be measured from the interior face of enclosing walls and the center line of party walls." Codified Ordinance § 1357.02. The ordinance also provides that "[n]o portion of any room which is less than seven feet in width shall be included in determining habitable floor area." Codified Ordinance § 1357.03(b).

c. The Warrensville Heights occupancy ordinance defines "habitable floor area" as "the floor area in any room in any dwelling, dwelling structure or multiple dwelling, which floor area is required to be contained within such dwelling, dwelling structure or multiple dwelling or part thereof in order to meet the minimum requirements of this Housing Code." Codified Ordinance § 1377.02. The ordinance also provides that "[n]o portion of any room which is less than seven feet in width shall be included in determining the habitable floor area." Codified Ordinance § 1377.02(c).

6. For Bedford Heights, the occupancy ordinance requires 200 square feet of habitable space for the first person and 150 square feet of habitable space for each additional person. Codified Ordinance § 1387.14.

7. For Fairview Park, the occupancy ordinance requires at least 300 square feet of habitable floor area for the first occupant thereof and at least 150 additional square feet of habitable floor area for every additional occupant thereof. Codified Ordinance § 1357.03(d).

8. For Warrensville Heights, the occupancy ordinance requires at least 350 square feet of habitable floor area for the first occupant thereof and at least 100 additional square feet of habitable floor area for every additional occupant thereof. Codified Ordinance § 1377.03(d).

9. For four occupants, Bedford Heights requires a minimum of 650 square feet of habitable space; Fairview Park requires a minimum of 750 square feet of habitable floor area; and Warrensville Heights requires a minimum of 650 square feet of habitable floor area.

10. Fairview Park also has a minimum square footage requirement regarding the occupancy of bedrooms. "Habitable bedroom floor area" is defined as "the sum of the gross horizontal area of each individual bedroom of a dwelling unit." Codified Ordinance § 1357.03(h)(3). The ordinance provides that "[t]he minimal habitable bedroom floor area of a dwelling unit shall be eighty square feet for the first occupant thereof and for each additional occupant fifty square feet." Codified Ordinance § 1357.03(f). In addition, the ordinance defines "bedroom" as "a habitable room designed for sleeping purposes, and which has a minimum habitable floor area of eighty square feet." Codified Ordinance § 1357.03(h)(1).

11. Before enacting the ordinances, none of the municipalities in this action conducted or reviewed studies or reports to determine the existence of overcrowding or what would constitute a reasonable occupancy standard for the respective municipalities.

12. Bedford Heights, Warrensville Heights and Fairview Park were members of

Building Officials and Code Administrators (BOCA) at the time of the enactment of their occupancy ordinances.

13. On February 21, 1989, Bedford Heights adopted Ordinance No. 89–28 providing for restrictions of 300 square feet for the first occupant and 200 square feet for each additional occupant as minimum square footage for occupancy in apartments within the city. On September 3, 1991, Bedford Heights amended Ordinance No. 89–28 by the adoption of Ordinance No. 91–15, which reduced the restrictions to 200 square feet for the first occupant and 150 square feet for each additional occupant as minimum square footage requirements in apartments within the city. Ordinance No. 91–15 is the ordinance presently in effect in the City of Bedford Heights.

14. In enacting the 1989 Bedford Heights occupancy ordinance, Building Commissioner John Marrelli was told that the proposed occupancy standard was satisfactory to Owners Management.

15. During consideration of the 1991 amendments to the Bedford Heights ordinance, Building Commissioner Marrelli met with apartment managers and worked out a compromise that all agreed to. Under the 1991 amendments to the Bedford Heights ordinance, more than 80% of two bedroom apartments in major complexes would be limited to three persons.

16. Before the occupancy ordinances, the defendant cities received complaints about overcrowding. Some complaints involved unsupervised children. Some complaints involved overcrowding by adults.

17. Some two-bedroom apartments in Bedford Heights would accommodate four persons under the ordinance restrictions of Ordinance No. 91–59.

18. Bedford Heights laws prohibit more than one family from living in a unit.

19. Bedford Heights occupancy ordinance applies only to multi-family units of two or more units.

20. Some landlords in Bedford Heights follow the occupancy ordinance and limit three in a two bedroom unit. Other landlords do not follow the occupancy ordinance and follow a two-person per bedroom standard. Bedford Heights has taken no efforts to enforce their occupancy standards.

21. The Ohio Apartment Association and the Northeast Ohio Apartment Association officially advocate the position that a two-person per bedroom occupancy standard is appropriate.

22. BOCA has adopted occupancy standards. The current BOCA standard for occupancy is a minimum of 70 square feet of habitable space per person in a bedroom for the first occupant and 50 square feet of habitable space in a bedroom if there are two or more occupants. For three to five occupants, BOCA requires a minimum of 120 square feet in a living room, a minimum of 80 square feet in a dining room, and a minimum of 50 square feet in a kitchen.

23. The current version of the Warrensville Heights occupancy ordinance was adopted by Ordinance No.1989–19, passed by the Warrensville Heights City Council on March 7, 1989.

24. Fairview Park has had an occupancy ordinance since at least 1967. The current version of the Fairview Park occupancy ordinance was adopted by Ordinance No. 89–17 Amended, passed by the Fairview Park City Council on November 6, 1989 and approved by the then Fairview Park Mayor on November 7, 1989.

25. Only one family can live in a rental unit under Fairview Park's occupancy ordinance.

26. The population for each defendant city was: for Bedford Heights, the population was 13,063 in 1970, 13,214 in 1980 and 12,131 in 1990. For Fairview Park, the population was 21,699 in 1970, 19,311 in 1980 and 18,028 in 1990. For Warrensville Heights, the population was 18,925 in 1970, 16,565 in 1980 and 15,745 in 1990.

27. Census data from 1990 shows Bedford Heights has 568 four- or more-person households in its population out of a total of 3,246 households. Bedford Heights has 968 married couple households with children under 18 years of age.

28. Census data from 1990 shows Fairview Park has 916 four-person households in its population out of a total of 7,814 households. Fairview Park has 1,579 married couple households with children under 18 years of age.

29. Census data from 1990 shows Warrensville Heights has 864 four-person households in its population out of a total of 6,433 households. Warrensville Heights has 1,106 households with children under 18 years of age.

30. Census data from 1990 reports that there are 33,472,000 total households in renter-occupied housing units in the United States with 37.7% containing children. The percentage of units with one child out of the total number of units (33,472,000) is 16.2%. The percentage of units with two children out of the total number of units (33,472,000) is 12.8%. Also, 5.6% have three children, 2.1% have four children, .7% have five children, .4% have six children or more. Of the 12,625,000 renter households with children under 18 years of age, 43% have one child, 34% have two children, 14.9% have three children, 5.6% have four children, 1.9% have five children and 1.1% have six children or more.

31. Population and school enrollment trends for each of the defendants have significantly decreased from 1970 to 1990. Fairview Park experienced a 17% population decrease and a 43% school enrollment decrease. Bedford Heights experienced a 7% population decrease and 48% school enrollment decrease. Warrensville Heights experienced a 17% population decrease and 2% school enrollment decrease.

32. Martin Jarret, a land planner, testified for plaintiff. Mr. Jarret testified that defendants' occupancy ordinances are unreasonable. Donald Eager, a land planner and fair housing expert, also testified for plaintiff. Mr. Eager testified that the defendants' occupancy ordinances are unreasonable. David Meyer, Associate Professor of Management, University of Akron, testified for plaintiff. Mr. Meyer testified that significant differences in the proportion of families of four between comparable apartment complexes within the same municipality were the result of enforcement or lack of enforcement of the municipality's occupancy ordinance. Mr. Meyer testified that the defendants' occupancy ordinances are unreasonable.

33. D.B. Hartt, a land planner, testified for Bedford Heights. Mr. Hartt testified that the occupancy ordinances of Defendant Bedford Heights are reasonable.

34. David Cook and William Minek were councilmen of Fairview Park when the 1989 occupancy ordinance was passed. They testified that the ordinance was not directed to city-wide issues of overcrowding, but to individual issues of overcrowding.

35. Some landlords in Bedford Heights, Warrensville Heights, and Fairview Park ignore the local occupancy ordinances and rent out two-bedroom suites to four people.

### CONCLUSIONS OF LAW

1. Prior to its amendment in 1988, Title VIII of the Civil Rights Act of 1968 (42 U.S.C. § 3601 *et seq.*) made it unlawful to discriminate in any aspect relating to the sale, rental, or financing of dwellings or in the provision of brokerage services or facilities in connection with the sale or rental of a dwelling because of race, color, religion, or national origin. The Housing and Community Development Act of 1974 later prohibited housing discrimination based on sex.

2. The Fair Housing Amendments Act of 1988 (Pub.L. 100–430, approved September 13, 1988) added, *inter alia,* prohibitions against discrimination in housing on the basis of handicap and familial status.

3. The Fair Housing Act provides, in pertinent part, that "it shall be unlawful [t]o ... make unavailable or deny, a dwelling to any person because of ... familial status ...". 42 U.S.C. § 3604(a). The Act defines "familial status" as follows:

"Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with—

(1) a parent or another person having legal custody of such individual or individuals; or

(2) the designee of such parent or other person having such custody, with the

written permission of such parent or other person.

42 U.S.C. § 3602(k).

4. The Fair Housing Act does not specifically apply to "a family of (4)" as opposed to a family of 3 or a family of 5. 42 U.S.C. § 3604(a).

5. The Fair Housing Act, as amended in 1988, also provides that "[n]othing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1).

6. The Secretary of the Department of Housing and Urban Development ("HUD") published a proposed rule on November 7, 1988 to implement the Act. 54 Fed.Reg. at 3234. After the normal administrative proceedings, HUD published a Final Rule on January 23, 1989. 54 Fed.Reg. 3232.

7. The HUD regulations regarding maximum occupancy track the language in 42 U.S.C. § 3607(b)(1). The provision in 24 C.F.R. § 100.301(b) provides: "Nothing in this part limits the applicability of any reasonable local, State or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 24 C.F.R. § 115.202(c) provides that "[t]he requirement that the state or local law prohibit discrimination on the basis of familial status does not require that the state or local law limit the applicability of any reasonable local, State or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling."

8. The General Counsel of HUD issued a memorandum dated July 12, 1995, in which he proposed to evaluate the reasonableness of housing provider occupancy restrictions by the then current version of a model code published by Building Officials and Code Administrators (the "BOCA" Code).

9. HUD has no current regulations that apply to local governmental restrictions on the apartment sizes that would be applicable to the defendants.

10. It is not the province of a federal court to act as a super-zoning board. *Exxon* *Corp. v. Governor of Maryland,* 437 U.S. 117, 124, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978).

11. The three ordinances at issue in this trial place a cap on the total number of occupants per dwelling unit based on a minimum number of square feet in the unit and fall within the exemption from the Fair Housing Act's governance found at § 3607(b)(1). *See City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 115 S.Ct. 1776, 1782, 131 L.Ed.2d 801 (1995) ("landlords legitimately may refuse to stuff large families into small quarters").

12. These three ordinances also are an exercise of the local government's police power on social legislation enacted to protect the public health, safety and welfare and, therefore, entitled to a presumption of validity. *Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

13. Plaintiff has the burden to show that the ordinance is unreasonable. *Id.*

14. The city defendants need only point out "a state of facts either known or which could reasonably be assumed" to support their ordinances in order to be entitled to the presumption of validity. *Id.* at 1175.

15. The city defendants do not need to assert a specific reason for choosing the minimum amount of square footage per occupant to cap the number of occupants within a unit. *Cf. Oxford House–C v. City of St. Louis,* 77 F.3d 249, 252 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 65, 136 L.Ed.2d 27 (1996).

16. Plaintiff adduced some evidence tending to show that the ordinances of the three defendant cities had a disproportionate impact on large families seeking rental housing in these communities.

17. The Court notes that these occupancy limits were set or amended near the time that the Congress prohibited housing discrimination based on familial status.

18. The Court finds, however, in reviewing all of the evidence presented at trial and in the submitted papers that the plaintiff has not shown the defendants intended to dis-

criminate against large families, or have actually done so.

For these reasons, the Court finds that plaintiff has failed to meet its burden of proof. The Court grants defendants judgment on all claims. Accordingly, this action is hereby terminated pursuant to Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.