**GROOME RESOURCES, LTD., L.L.C.**

v.

**PARISH OF JEFFERSON.**

No. Civ.A. 99–1491.

United States District Court,
E.D. Louisiana.

June 18, 1999.

## ORDER AND REASONS

BARBIER, District Judge.

Plaintiff, Groome Resources, Ltd., L.L.C. ("Groome"), a for-profit limited liability partnership which is in the business of operating supportive group homes specifically for Alzheimer's patients, seeks a special zoning accommodation or waiver to operate a group home for five Alzheimer's patients in a residential district located in Jefferson Parish. Trial was held on June 15, 1999 on plaintiff's motion for preliminary injunction, consolidated with trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2).

## BACKGROUND

Plaintiff has signed an agreement to purchase the home at 5109 Elmwood Parkway in Metairie, has secured financing from Whitney Bank, but has had to delay the closing date several times because Jefferson Parish has not acted on the application. At present the closing is scheduled for Monday, June 21, 1999, and likely will not be extended further.[1] If plaintiff is unable to obtain the zoning accommodation, it will not proceed with the purchase. If plaintiff is able to purchase the home, it will then be able to apply to the State of Louisiana Department of Social Services for the necessary licensing to open and operate the group home.

The Jefferson Parish zoning ordinance provides that not more than four unrelated persons may occupy a single home in a residential district, and then only on a non-profit, cost-sharing basis. Zoning Ordinance at 3–6. The ordinance also allows "a reasonable accommodation for handi-

---

1. The present extension until June 21, 1999, was granted only after intervention by this Court. Groome will also pay a $2,000 penalty for the delay in closing.

capped persons as defined by the Federal Fair Housing Act" based upon application to, review and approval by the Department of Inspection and Code Enforcement. Zoning Ordinance at 20–25.

Plaintiff Groome signed the agreement to purchase the home on February 8, 1999 and applied for a "reasonable accommodation" on February 11, 1999. Groome had previously opened an identical group home in another residential district within Jefferson Parish, and had received approval within less than 45 days. Groome's application for the Elmwood Parkway location was reviewed by both the Department of Inspection and Code Enforcement and the Jefferson Parish Attorney's Office. On March 15, 1999, the Parish Attorney's Office recommended approval of the application. The following day, March 16, 1999, the director of the Department of Inspection and Code Enforcement replied that it had reviewed the application, that the requested accommodation would not affect the density of the neighborhood, that the home had ample space to accommodate five persons, and that the requested accommodation to the zoning ordinance should be granted.

Although the zoning ordinance provides that approval of applications for reasonable accommodation for handicapped persons is to be made by the Department of Inspection and Code Enforcement, and despite findings by that Department and the Parish Attorney that the requested accommodation was reasonable and should be granted, the Parish of Jefferson has not yet formally acted upon plaintiff's application because of objections voiced by other residents in the Elmwood Parkway neighborhood.

## THE FAIR HOUSING ACT

■ The Fair Housing Act Amendments of 1988 ("the Act") prohibit discrimination in housing on the basis of handicap. 42 U.S.C. § 3601(f)(1); *Oxford House–C v. City of St. Louis,* 77 F.3d 249 (8th Cir. 1996). Persons with Alzheimer's Disease are handicapped within the meaning of the Fair Housing Act. 42 U.S.C. § 3602(h). In addition, the Act covers zoning ordinances such as the one at issue in the present case. *Oxford House-C,* at 251.

■ The Fair Housing Act makes it unlawful to "discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1)(c). Any aggrieved person may bring a civil action to enforce the Act. 42 U.S.C. § 3613. An "aggrieved person" is defined by the Act as "any person who . . . claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). Accordingly, plaintiff as a provider of housing to Alzheimer'S patients has standing under the Fair Housing Act to bring this suit. See *Remed Recovery Care Centers v. Township of Willistown,* 36 F.Supp.2d 676 (E.D.Pa. July 29, 1999).

Defendants advanced three primary defenses at trial: (1) the Fair Housing Act Amendments of 1988 are unconstitutional; (2) this suit is premature because the application has not yet been denied; and (3) the requested accommodation is neither reasonable nor necessary.

### The FHA is constitutional

■ With regard to the constitutionality of the Act, the Court notes that each of the three circuit courts to have considered the issue have held that the Act was a valid exercise of Congress' power under the Commerce Clause. *Oxford House–C,* supra; *Morgan v. HUD,* 985 F.2d 1451 (10th Cir.1993); *Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030 (11th Cir.1992).

### Plaintiff's suit is not premature

■ Defendant's argument that the suit is premature is belied by the trial evidence which clearly demonstrated that as early as March 16, 1999, the appropriate Jefferson Parish departments charged with responsibility for reviewing and approving such applications had completed the review process and were prepared to approve the application until the district councilman in-

tervened. There is nothing in the ordinance which requires approval by the parish council or any individual councilperson. Groome suggests that the Parish has delayed acting on the application in the hope that the matter will become moot if the .proposed purchase falls through.[2]

Patricia Jackson, the assistant parish attorney supposedly in charge of the review process, could not say what the current status of the application was, what if anything remained to be done to complete the process or when it might be done, and could not say who the ultimate decision maker would be (although the zoning ordinance clearly gives that authority to the Department of Inspection and Code Enforcement). On its face, Jefferson Parish's ordinance provides for reasonable accommodation applications pursuant to the Fair Housing Act. However, there are no procedures and no criteria established for the consideration of such applications. Instead, the parish seems to use an *ad hoc* approach at best. Under the particular circumstances of this case, to deny plaintiff's claim as premature would effectively frustrate the clear mandates of the Fair Housing Act.

*The requested accommodation is both reasonable and necessary*

The Fair Housing Act requires defendant to make reasonable accommodations in its generally applicable zoning ordinances when necessary to give a handicapped person "equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(b); *Oxford House–C,* at 251.

The Act also prohibits defendant from interfering with handicapped individuals' exercise of their equal housing rights. 42 U.S.C. § 3617.

■ While Jefferson Parish claims it does not discriminate against the handicapped, its zoning ordinance clearly has a disparate impact on Alzheimer's patients who may wish to live in a residential neighborhood. Because these handicapped persons need intense supervision and care, the cost of operating a group home setting is high. The trial evidence convinces the Court that the artificial limit of four unrelated persons living in a single group home will make it economically unfeasible for plaintiff to operate the proposed home. Plaintiff presently operates four similar group homes, each with five residents. In fact, one of these homes is on Rosa Avenue in another residential area of Jefferson Parish.

In addition, the Court was impressed with the photographs of the homes introduced into evidence and the testimony of neighbors of other homes operated by plaintiff. From all outward appearances, the other homes are well-maintained, attractive private residences. There are no signs to indicate that these are group homes. The other homes operated by Groome have been well received by their residential neighbors. Since none of the residents drive, there are few if any automobiles at the homes. There is absolutely no evidence that this proposed group home with five Alzheimer's patients would cause

2. Following initial review and approval by both the Department of Inspection and Code Enforcement and the Parish Attorney's Office on March 16, 1999, several days later Councilman Muniz asked that approval be delayed. The councilman met with a group of residents from the neighborhood and the Parish Attorney on March 19. Apparently nothing further was done to act on the application until plaintiff's counsel wrote to the Parish Attorney on April 28, demanding the requested accommodation be granted. The only action taken since was a letter from the Parish Attorney requesting "additional information", mostly pertaining to information about the applicant, Groome, and state licensing information. Although none of this information was requested in the initial application form, and was not requested in plaintiff's previous application for Rosa Avenue, plaintiff complied within several days. Except for a couple of phone calls to the Louisiana Department of Social Services made by Patricia Jackson in early June, there was no evidence that the Parish has taken any further steps to act on the application. The application has now been pending 127 days without being formally acted upon. According to Ms. Jackson, such applications are typically handled within 45 days.

any problems or in any way impact the health, safety, welfare or character of the neighborhood. If the home was occupied by a family, there would be no limit on the number of persons who reside there, or the number of automobiles or visitors at the home. In fact, the same residential zoning permits small home businesses, schools, and day care centers, all of which cause more congestion and traffic problems than is expected from the group home.

The requested accommodation is clearly reasonable and necessary to allow the handicapped to have equal opportunity to live in residential settings of their choice, as mandated by the Fair Housing Act Amendments of 1988. *Parish of Jefferson v. Allied Health Care, Inc.,* 1992 WL 142574 (E.D.La., McNamara, J.).

## CONCLUSION

For these reasons, the Court finds that the Jefferson Parish zoning ordinance as applied and Jefferson's failure to grant plaintiff's application for reasonable accommodation are in violation of the Fair Housing Act Amendments of 1988 and have the effect of discriminating against handicapped persons by unnecessarily restricting their ability to live in residences of their choice. Accordingly,

IT IS ORDERED that the Parish of Jefferson is hereby permanently ENJOINED from interfering with or withholding approval of a reasonable accommodation for Groome Resources, Ltd., L.L.C. to operate a group home for Alzheimer's patients located at 5109 Elmwood Parkway in Metairie. Specifically, Groome is to be permitted to open and operate the home with five Alzheimer's patients as residents. This injunction does not prohibit Jefferson Parish, the State of Louisiana, or any other regulatory agency from requiring compliance by Groome with all other ordinances and regulations that may apply and are not the subject of this litigation.

The Court will in due course issue a supplemental order covering the remaining issues of damages and attorney's fees, together with a final judgment.